**STATE of Alaska, Appellant,**

v.

**Freddie E. ARMANTROUT, Appellee.**

**No. 1303.**

Supreme Court of Alaska.

April 5, 1971.

---

G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellant.

Marshall K. Coryell, Special Asst. Public Defender, Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

**PER CURIAM.**

This is a sentence appeal. The State of Alaska appeals to this court pursuant to AS 12.55.120(b) on the ground that the sentence imposed by the trial court is too lenient.

The appellee, Freddie E. Armantrout, was convicted of assault with a dangerous weapon in violation of AS 11.15.220 after a trial by jury. He was sentenced on April 27, 1970, to the custody of the Commissioner of the Department of Health and Welfare for three years. The sentence was suspended and probation was ordered during the period of the sentence.

There are two conflicting accounts of the incident which led to Armantrout's arrest and conviction. The state contends that Armantrout and a friend, George Flynn, picked up the victim George Lee Brooks, Jr., who was extremely intoxicated, by telling Brooks they were driving out to a dance in Palmer. Armantrout and Flynn purportedly intended to rob Brooks when they picked him up. According to the State, Brooks was driven to a secluded spot just off the Palmer Highway between Eagle River and Palmer; during the trip from Anchorage, Brooks passed out in Armantrout's car. When Armantrout and Flynn reached the chosen spot, they supposedly proceeded to rob their victim, at which time he awakened from his stupor, realized what was happening, and attempted to run. It is the State's theory that when Brooks tried to escape, Armantrout struck him on the head with a tire iron, thereby rendering him unconscious. The State argues that Armantrout and Flynn consummated their robbery, and left their victim for dead.

A somewhat different story of the crime is related by Armantrout. According to his version, he was drinking in Anchorage on the night in question with a group comprised of, among others, Flynn and George Lee Brooks, Jr. As the evening wore on, the size of the group dwindled until there were three people left, Armantrout, Brooks, and Flynn. All were quite inebriated, but decided, nonetheless, to drive to a dance in Palmer. Armantrout drove his two companions toward their destination in his car. The car had been recently purchased and Armantrout was very proud of it. In the course of the journey Brooks allegedly passed out in the back seat of the car and vomited. Armantrout states that he pulled the car off of the road and removed Brooks from the back seat, a process which apparently woke Brooks up. He then ordered Brooks to clean up his mess; Brooks adamantly refused, and cursed Armantrout. It is Armantrout's claim that he became enraged at Brooks' conduct; the two men began fighting. During the course of the altercation, Armantrout picked up a tire iron and hit Brooks. After he struck Brooks and saw the damage which his blow had caused, he panicked, thinking that Brooks was dead. Armantrout and Flynn proceeded to remove Brooks' watch and wallet in an attempt to prevent identification of their victim, and then fled the scene.

While the parties differ as to the precise nature of the events leading to the attack in question, it is conceded that Armantrout did strike Brooks with a tire iron. There is no dispute on the extent of the damage to Brooks; he suffered three broken facial bones and a wound which required 27 stitches.

The record reveals that Armantrout is 23 years old and a sergeant in the United States Army. He attended school through the ninth grade. While in the Army, he has earned a high school equivalency diploma. Armantrout has a limited conviction record. He was convicted of the felony of passing an insufficient funds check in his home town of Garden City, Kansas, and sentenced to thirty days in jail. He was convicted in Anchorage for failing to pay a traffic ticket which had been issued for speeding and driving without a license.

Prior to sentencing, letters of recommendation from Armantrout's military superiors were submitted to the trial court. In substance, they state that he is a model soldier with excellent leadership abilities.

At sentencing, the prosecutor recommended a three-year period of incarceration. The probation officer who prepared the pre-sentence report recommended that the appellee be denied probation and that he be sentenced in relation to the District Attorney's recommendation. The defense counsel, on the other hand, argued for stringent probation.

The trial judge rejected the recommendations of the prosecutor and the probation officer and imposed a suspended sentence with a three-year period of probation. In arriving at his sentence, the judge gave considerable weight to Armantrout's version of his attack on Mr. Brooks. He found that the removal of Mr. Brooks' watch and wallet was not made with intent to steal but rather with intent to remove his identification. The judge expressed concern over the brutality with which the victim had been attacked, and admonished Armantrout to place greater value on human life. However, in passing sentence, the judge seems to have given controlling weight to recommendations from Armantrout's military superiors, and to Armantrout's own assurances that he would, in the future, control his temper.

■ We conclude that the sentence imposed by the trial judge was too lenient.

We feel that some incarceration should have been imposed. This sentence failed to sufficiently reflect the nature and extent of the brutal attack upon the victim. It is no excuse that Armantrout removed the victim's watch and wallet for the purpose of preventing identification. No effort was made by Armantrout to get help for his victim. Rather, the victim was left for dead in an isolated area. Armantrout and his companion threw away their bloody shirts and washed the victim's blood from the car.

The victim suffered serious injuries as a result of Armantrout's brutal attack. Death could easily have resulted.

Under the circumstances, the trial judge gave too much weight to the assurances of Armantrout and his military superiors, and too little weight to the nature and consequences of the violent episode which led to Armantrout's conviction.

We believe, as we stated in State v. Chaney,[1] that in this case incarceration would bring home to Armantrout "the seriousness of his dangerously unlawful conduct, would reaffirm society's condemnation of [assault with dangerous weapons], and would provide the Division of Corrections of the State of Alaska with the opportunity of determining whether appellee required any special treatment prior to his return to society."

We also note that the trial judge made no provision for continuation and enforcement of Armantrout's probation in the event he was transferred by the United States Army from Alaska. Unless probation is accompanied by continued supervision, it is meaningless insofar as the rehabilitation of an offender is concerned.

■ The law of Alaska views assaults with dangerous weapons as among the most serious crimes, and imposes a maximum sentence of ten years in prison.[2] A sentence of probation under the facts of this case does not implement the State's public policy. We, therefore, express our disapproval of this sentence.

1. 477 P.2d 441, 447 (Alaska 1970).

2. AS 11.15.220.