Harold Harvey JOE, Appellant,

v.

STATE of Alaska, Appellee.

No. 2401.

Supreme Court of Alaska.

Nov. 7, 1975.

Phillip P. Weidner, Asst. Public Defender, Jonathan L. Daniel, Legal Intern, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage,

Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEBER, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

Appellant Harold Joe entered a plea of nolo contendere to an indictment under which he was charged with the crime of assault with a dangerous weapon.[1] After psychological and psychiatric evaluations were made, a presentence report filed, and a sentence hearing held, the superior court imposed a ten-year term of imprisonment. In its judgment and commitment, the superior court further recommended that Joe ". . . be placed in an alcoholic rehabilitative program, and that he be released on parole at the discretion of the Parole Board." This sentence appeal followed.

In contending that the superior court's imposition of the maximum term of imprisonment is an excessive sentence, Joe has advanced three major lines of argument. First, Joe argues that he cannot be categorized as the "worst possible offender" since he was only an accomplice in the assault with a dangerous weapon, was unarmed, and has no prior criminal record which demonstrates a propensity towards violence. Secondly, Joe complains that the sentence imposed will not serve the sentencing judge's stated goal of rehabilitation. Lastly, it is contended that the superior court was clearly mistaken[2] in decreeing a maximum sentence because the person who initiated the attack and wielded the weapon, one Lawrence Kompkoff, received a sentence of only three years while Harold Joe merely held the victim for "two seconds and then helped him escape."

Before analyzing each of these separate contentions, we deem it appropriate to set forth the circumstances of the crime in question and the significant aspects of Joe's background. As to the assault with a dangerous weapon, the record shows the following:

On October 20, 1973, William Hansen, a fisherman from Ekuk, was in Anchorage for medical treatment of an infected finger. At Lawrence Kompkoff's invitation, Hansen accompanied Kompkoff to a room at the S & S Apartments. At the time of their arrival Joe was sitting at a table, and Hansen noted that there were "a couple empty gallons of port wine setting around, one . . . that was about a quarter full I imagine."

According to Hansen's testimony given at the sentencing hearing, as soon as Kompkoff had finished his meal he accused him of "messing around" with a certain girl downtown. Kompkoff then pulled a pistol out of his boot, cocked it, and pointed it at Hansen's head. Kompkoff subsequently put the gun away and then pulled out a knife. Hansen states, "And the next thing I knew, he just brought the knife up in a flash and stabbed me in the shoulder once and once again." During this period of time Joe remained seated at the table, although he did make the suggestion that Kompkoff should throw Hansen down in a corner somewhere and place a blanket over him so the stabbing would be easier for Kompkoff.

Meanwhile, Kompkoff pursued Hansen and as the latter circled back, Joe threw him to the floor. According to Hansen,

---

1. AS 11.15.220 provides:
    A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

2. In *Nicholas v. State*, 477 P.2d 447, 449 (Alaska 1970), we said in part:
    But respect for the discretion of the trial judge will not prevent this court from making our own examination of the record and we will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.

while he was on the floor Joe reached for a blanket ". . . but Larry was already coming in with the knife, slashing at my face . . . he caught my wrists . . . and he got the knife right inside of my knee cap. And that knife wasn't very sharp. I felt that thing cut and I screamed." At this point, the assault was halted by a fourth person present who told Kompkoff to take it easy. Kompkoff then put the knife away and instructed Hansen to roll him a cigarette.

Later Kompkoff again drew his knife and continued to threaten Hansen, eventually inflicting a serious wound to Hansen's abdomen.[3] Kompkoff then walked away and at the same time the fourth man moved slightly away from the door. Joe then approached Hansen and said, ". . . if you want to make it out of this apartment alive, you better do it right now." Hansen then fled the room and contacted the police.

Turning to Harold Joe's background, the record reflects the following: Joe was born in 1933 at Chitina, Alaska. Both of his parents died while he was extremely young, his father in a mining accident and his mother in a flu epidemic. He has the benefit of a tenth grade education, leaving school at the age of seventeen. Since departing school, Joe has worked temporarily at different jobs which have been limited to manual labor due to his lack of vocational training. By his own admission Joe commenced drinking at the age of 18. The record reflects Joe's strong addiction to alcohol since his more youthful days.

The presentence report indicates that Joe received an undesirable discharge from the United States Army as the result of a special court martial for misappropriation of a motor vehicle and a summary court martial for a minor offense. This same report reveals that Joe has previously been convicted of eight separate felonies during the period 1955 to 1972.[4] Joe has also been convicted of approximately sixty misdemeanors in the period from 1950 to 1973.[5] The author of the presentence report recommended against granting Joe probation based on the following reasons:

> Considering [Joe's] associations, his progressively more serious record in terms of frequency and type of offenses, his propensity for violence, and the psychiatric prognosis, it appears that the only alternative remaining is further incarceration with sufficient time to serve as a deterrent to further crime and to allow defendant the opportunity to obtain and complete a vocational training program which will enable him to become a contributing member of society. Towards this end, counseling should also be provided.[6]

At the sentencing hearing, counsel for the prosecution recommended that Joe be incarcerated for the maximum ten-year period. Defense counsel argued that since Kompkoff received only a three-year sentence, . . . "whatever sentence that the court imposes, it certainly [should] not impose a sentence any more severe than that which was imposed on Mr. Kompkoff

---

3. Hansen testified that he was cut a total of seven times.

4. In 1955 Joe was convicted of the crime of theft on a government reservation; in 1960 of aiding and abetting an attempted escape; in 1961 of burglary not in a dwelling and grand larceny; in 1962 of breaking and entering and grand larceny; in 1966 of larceny in a building; and in 1972 of burglary not in a dwelling.

5. Most of Joe's misdemeanor convictions were for drunkenness or other alcohol related offenses.

6. Regarding Joe's psychiatric prognosis, the psychiatric report which was furnished the superior court concludes

> . . . there is literally no good disposition. This man's a classic example of failure of our present correctional system either to rehabilitate or to deter persons from repeated crimes, in this case related to alcohol. If he returns to that system he will, of course, get worse but by this point there is very little likelihood that he could be rehabilitated through other means either.

. . . ." [7]   In setting out the reasons for his sentence of ten years, Judge Hansen stated it was his feeling

> . . . that should [Joe] overcome his problem with alcohol, he is probably a danger to no one . . . . I'm going to sentence Mr. Joe to 10 years with no minimum, a strong recommendation and order—if I had it within my power to order it that he be placed in an alcohol rehabilitation program, a recommendation that he be released on parole when in the opinion of the professionals charged with making such determination he is a fit candidate for parole. If the professionals can responsibly determine within a year that Mr. Joe has overcome his alcohol problem, then that's the time in which he should be paroled. I—I'm imposing the 10 year maximum in the event that no one—that he cannot establish his rehabilitation, that he cannot establish that he's overcome his drinking problem. So long as you are a practicing alcoholic or as long as you are drinking, Mr. Joe, I regard you as a threat to society. I suspect when you're not drinking, you're not a threat to anybody.

■  We turn first to Joe's contention that imposition of the maximum period of ten years constitutes an excessive sentence because he is not the "worst possible offender." In *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971), this court said:

> In sentencing, it should be remembered that the maximum sentence for a partic-

ular offense expresses a legislative judgment about how the worst offender within a class designated by the legislature should be treated.[8]

The proposition that maximum sentences should usually be reserved only for the worst offender ". . . does not preclude the sentencing judge from considering a variety of factors which can make a defendant a 'particularly difficult type of offender.' " [9]   Recently this court articulated several of the factors we consider significant when characterization of a defendant as "the worst type of offender," in connection with the imposition of a maximum prison term, is an issue. In *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975), we indicated that these considerations are

> . . . prior criminal convictions, age, military records, employment history, drug or alcoholic addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public.

■  Here, given Joe's extensive record of eight prior felony convictions,[10] his undesirable military discharge, his prolonged addiction to alcohol, the presentence report evaluation and recommendation, and the role Joe played in the Kompkoff assault with a dangerous weapon, we think that adequate evidence is present in the record which would justify classification of Joe as a "worst type of offender." [11]   Thus, we

---

7. At a later point in this opinion, we will treat the Kompkoff sentencing disparity argument in somewhat more detail.

8. *See also Donlun v. State,* 527 P.2d 472, 474–75 (Alaska 1974) ; *Tarnef v. State,* 492 P.2d 109, 118 (Alaska 1971) ; *Galaktionoff v. State,* 486 P.2d 919, 924 (Alaska 1971).

9. *Whitton v. State,* 533 P.2d 266, 269 (Alaska 975), quoting from *Tarnef v. State,* 492 P.2d 109, 118 (Alaska 1971).

10. *Compare Crow v. State,* 517 P.2d 756 (Alaska 1973) and *Kriska v. State,* 501 P.2d 159 (Alaska 1972).

We have, as urged by appellant, not given significant weight to Joe's convictions of the crimes of "drunk," "drunk in public," "drunk in private," "disorderly conduct," "breach of peace," and "vagrancy."

11. Counsel for appellant argues that Joe's lengthy criminal record is essentially devoid of any indications which are supportive of the prosecution's portrayal of Joe as a violent person. In his brief, counsel for appellant admits "There is possibly one violent crime on Mr. Joe's record, a 1958 assault and battery which involved the forceful placing of Mr. Joe's fist in the eye of another gentleman."

conclude that since the record is fully supportive of a · characterization of "worst type of offender," the superior court's imposition of the maximum sentence was not erroneous.

■ Joe also argues that a maximum ten-year sentence does not serve the sentencing court's stated goal of rehabilitation. The prosecution makes the counterargument that the record reveals "that the judge's purpose in imposing a ten-year period to serve was not rehabilitation as such; rather, it was to provide for the isolation of the offender from society to prevent further criminal conduct in the event that attempts to rehabilitate him should fail." Our study of the superior court's sentencing remarks persuade us of the soundness of the state's position.[12] The superior court's comments are reflective of both an awareness and appropriate application of the sentencing criteria first articulated by this court in *State v. Chaney*, 477 P.2d 441 (Alaska 1970). In light of Joe's prior criminal record, the nature of the offense in question, and Joe's background as set forth in the presentence and psychiatric reports, we cannot say that the superior court was clearly mistaken in imposing a sentence which provided for the possibility

of lengthy incarceration should Joe not be successfully rehabilitated.[13]

This brings us to appellant's last point in this appeal. Here Joe argues that the disparity between the sentence given to Lawrence Kompkoff and his ten-year sentence is "Untenable in Light of Their Respective Degrees of Participation and of Other Circumstances." As we have noted earlier, Kompkoff's three-year sentence was the subject of considerable argument at Joe's sentencing hearing. Appellant's trial counsel urged that the superior court should not impose a more severe sentence on Joe because "Mr. Kompkoff deliberately and in a very premeditated fashion extending over a considerable period of time, threatened, cut, stabbed the victim in this case and . . . Mr. Joe for a few brief seconds held him down somewhat feebly and then encouraged him and made it possible for him to leave the apartment." The prosecutor in turn argued that he did not participate in the sentencing of Kompkoff and that he did not believe Kompkoff's three-· year sentence was appropriate.[14] On appeal, counsel for appellant has expanded his disparity argument by detailing Kompkoff's record, concluding with the statement that "These crimes are delineated to

---

In our view, the facts of the assault upon the person of William Hansen do indicate dangerous propensities on Joe's part which pose a clear risk to the public. Prior to Joe's intervention, Hansen had received only two minor wounds and appeared able to defend himself. It was Joe who first conceived the idea of making the stabbing easier by throwing Hansen to the floor and covering him with a blanket. Joe then carried out his own suggestion and as a result, Kompkoff stabbed Hansen in the wrist and also inflicted a most painful stabbing in the area of Hansen's kneecap.

12. The relevant portions of the superior court's sentencing comments are set forth *supra* at page 7.

13. In *Kriska v. State*, 501 P.2d 159 (Alaska 1972), we upheld a maximum ten-year sentence for the crime of grand larceny, which represented Kriska's ninth felony conviction. *See also State v. Wortham*, 537 P.2d 1117 (Alaska 1975). The offense in question was

committed prior to the effective date of Ch. 110, § 1, SLA 1974, which amended AS 33.15.080 to require the mandatory service of one-third of all sentences of imprisonment (other than life imprisonment) before a prisoner becomes eligible for parole. Under the terms of the superior court's sentence in the case at bar, Joe is not required to serve any minimum period of time before parole eligibility is established.

14. Counsel for the state further argued that Kompkoff's sentence "was not long enough and it might even be classed as a poorly advised sentence. I would urge, Your Honor, not to make the same mistake in this case." At a later point in his comments to the superior court, the prosecutor reiterated this theme stating, "The fact that he drew somebody else and got . . . 3 years . . . was fortuitous as far as he personally was concerned. Had I been there, he certainly wouldn't have gotten it . . . . "

show that there is no significant difference between the records of Kompkoff and Joe such as to justify the sentences imposed." [15]

In *Nicholas v. State,* 477 P.2d 447, 448 (Alaska 1970), we said, "[I]t is not the purpose of appellate review to enforce uniformity" of sentences. That statement was made with reference to imposing like sentences for the same offense without tailoring the sentence to the background of the individual defendant. We have also referred to the fact that one of the objectives of sentence review is to "promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process." [16]

Assuming arguendo that appellant's summary of Kompkoff's past criminal record is accurate, we would incline strongly towards the view that the sentence which Kompkoff received was too lenient.[17] For it seems that the Kompkoff sentence neither furthers the sentencing goals of both individual and general deterrence, nor does Kompkoff's three-year sentence foster respect for Alaska's criminal laws. On the other hand, guided by the criteria of *Chaney,* and for the reasons previously articulated, we cannot say that the superior court was clearly mistaken in sentencing Joe to a ten-year period of incarceration.[18]

The sentence is affirmed.

BURKE, J., not participating.

15. It is stated in Joe's appellate brief that "Lawrence Kompkoff's record, as chronicled on his presentence report, shows that he is a repeat offender. In a period of seven years, he had twenty-one arrests for disorderly conduct and drunkenness. Other offenses include shoplifting, larcenies, concealing stolen property, failure to render self for judgment, and escape."

16. *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970). *Compare Ames v. State,* 533 P.2d 246, 250 (Alaska 1975), where we said, "Defendant's assertion that the sentence is excessive because it does not conform to a 'statistical average' in other rape cases is without merit."

17. In *Ames v. State,* 533 P.2d 246, 250 n. 8 (Alaska 1975), we remarked that

[t]his court has previously expressed the view that violent crimes involving physical injury to innocent people are to be regarded as our most serious offenses and are not to be treated lightly. *See . . . State v. Armantrout,* 483 P.2d 696 (Alaska 1971), where this court condemned as too lenient sentences for rape and for assault with a dangerous weapon, respectively.

18. *Compare Thomas v. State,* 524 P.2d 664 (Alaska 1974) and *Stevens v. State,* 514 P.2d 3 (Alaska 1973). In both cases maximum sentences for assault with a dangerous weapon were affirmed.