Boyd Ray **BURLESON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2466.**

Supreme Court of Alaska.

Dec. 22, 1975.

1196

William H. Fuld, Kay, Christie, Fuld & Saville, Anchorage, for appellant.

Stephen Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and BURKE, Justices.

## OPINION

BOOCHEVER, Justice.

Boyd Ray Burleson was convicted upon his plea of guilty to two counts of mayhem for a particularly heinous offense involving the pouring of sulfuric acid over the heads of his former wife, Jeanne Burleson, and her acquaintance, Dale Edwards. The offense was committed by an assailant paid by Mr. Burleson. Mr. Burleson was sentenced to imprisonment for 20 years on each count, to run consecutively. He appeals, contending that: (1) he was denied the right to counsel of his choice at the sentencing due to the court's refusal to grant a five-week continuance; (2) the sentence is excessive; (3) the sentence report was based on immaterial information; and (4) the manner of sentencing was improper.

After a lengthy separation, Boyd and Jeanne Burleson's marriage of 24 years was terminated by divorce on October 10, 1973. As early as August 1973, Mr. Burleson started contacting individuals, offering substantial sums of money if they would kill his wife and Mr. Edwards. At least four persons were asked to commit the murders or refer Mr. Burleson to someone who would.

In Texas on November 1, 1973, Mr. Burleson first conferred with the eventual assailant, Lee Jones, and found him willing to carry out requests to maim Jeanne Burleson and Dale Edwards. Several days were spent seeking acid of the appropriate strength, and, when it was located, Mr. Burleson tested it both by placing some on his hand and by putting a piece of meat in the acid. Satisfied that the acid was of sufficient strength, Mr. Burleson purchased the necessary plane tickets for Jones, and Jones left for Anchorage with the sulfuric acid which he was to pour on the victims. Jones agreed to perform these acts for $4,000.00 and apparently was told by Mr. Burleson that he would get more money if he killed Dale Edwards. Jones committed the crime on November 11, 1973 and returned immediately to Texas. He then contacted Mr. Burleson, who was in North Carolina, and reported the successful completion of the mission. According to Jones, Mr. Burleson's only comment was that he, Jones, should have killed Edwards.

After unsuccessfully contesting his extradition from North Carolina, Mr. Burleson was returned to Anchorage, Alaska for trial. Originally, Mr. Wendell P. Kay represented Mr. Burleson, but in early November 1974, Mr. Fuld began appearing for Mr. Burleson. On November 19, Mr. Burleson pleaded guilty to two counts of mayhem.

Sentencing was set for January 10, 1975 but was continued until February 14, 1975. On February 11, 1975, the court received a letter from the defendant requesting a further continuance of sentencing for approximately five weeks so that Mr. Kay, defendant's counsel of choice, could appear with the defendant at sentencing. A motion to this effect was filed on February 14, 1975 and argued the same day. The motion was denied, and Mr. Burleson was sentenced as indicated.

## DENIAL OF THE CONTINUANCE

Mr. Burleson asserts that the denial of his motion for a continuance constituted an abuse of discretion. He argues that he was seriously prejudiced since the denial of the continuance prevented him from appearing at the sentencing with his counsel of choice, Mr. Kay. According to Mr. Burleson, Mr. Kay had a better understanding of his motives and character than did Mr. Fuld. At the time of the sentencing, Mr. Kay was in Arizona fulfilling a teaching commitment and was not expected to return to Alaska until five weeks after the date of sentencing.

In *Klockenbrink v. State*, 472 P.2d 958 (Alaska 1970), we addressed similar questions also involving the services of Mr. Kay. Defendants were arrested and their vessel seized on July 29, 1968. Trial was set for August 6 because the two principal state witnesses planned to leave Alaska

during the middle of August. Mr. Kay advised the court that because of a conflicting trial setting, he would be unable to be present on August 6. The case was continued until August 7, and on that date Mr. Brundin, the new counsel, again requested a continuance to prepare the defense. The motion was denied. On appeal, we stated:

> Granting or denying a continuance traditionally has been within the discretion of the trial judge, and not every denial of a request for additional time violates due process. . . . To constitute error an abuse of this discretion must be shown. It is only an arbitrary refusal that is violative of due process and that question depends upon the circumstances of each case, especially the reasons supporting the request for continuance. [citations omitted] 472 P.2d at 964.

We indicated that before a conviction would be reversed because of the denial of a motion for continuance, it must be shown that the denial resulted in prejudice to the accused.

We also discussed in *Klockenbrink* the right of a defendant to counsel of his choice,[1] stating that while it will not always be the case that a continuance should be granted to afford an accused the opportunity to secure counsel of his choice, the trial court should have granted the continuance under the circumstances there involved.[2]

In *Barrett v. Gagnon*, 516 P.2d 1202 (Alaska 1973), Mrs. Barrett's counsel sought to withdraw four days before trial and stated that, if his request was denied, he would do no preparation and be there on record only. The trial judge informed Mrs. Barrett that if she consented to the withdrawal, he would still insist that the trial proceed as scheduled, and that if she

---

1. See also *McKinnon v. State*, 526 P.2d 18 (Alaska 1974), and *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961) (also involving attorney Kay).

2. The filing of the complaint on July 29 and the trial date setting of August 6 in themselves demonstrate difficulty in obtaining any attorney with sufficient time to prepare. When such a difficulty is coupled with the location of the trial in Kodiak where there were only two practicing attorneys, it is apparent that compelling circumstances would be necessary to force the trial to begin as scheduled.

did not consent, he would force counsel to go forward at the trial. Mrs. Barrett consented to the withdrawal and requested a continuance to obtain counsel. The superior court denied this request and ordered Mrs. Barrett to proceed immediately to trial. At trial, the superior court dismissed her claim and granted Gagnon's counterclaim. Noting that withdrawal of counsel on the eve of trial will not automatically justify a continuance, we determined that in *Barrett*, the lower court abused its discretion in denying the motion for a continuance.

> From the facts previously alluded to, it is clear that only two months had elapsed between the filing of Barrett's complaint, Gagnon's counterclaim and the September 5, 1972 trial date setting. Further, the record shows that Barrett had a limited time within which to respond to her attorney's withdrawal motion. Barrett received notice of this motion on the evening of September 1, which was a Friday. The following Monday was a legal holiday, and on Tuesday, September 5, the superior court heard the motion for withdrawal.
>
> . . . . . .
>
> . . . The trial lasted only one day with Barrett acting as her own counsel. Review of the transcript of the trial proceedings indicates that Barrett was seriously prejudiced by having to appear pro se.
>
> In light of the particular facts of this case, we think that the trial court abused its discretion in denying appellant's request for a continuance after it had approved the motion to withdraw as counsel submitted by appellant's attorney. The reason for counsel's withdrawal was adequately explained, and the diligence of appellant in attempting to secure new counsel was manifest. [footnote omitted] 516 P.2d at 1203–04.

■■ Our prior holdings thus indicate that adequate time should be afforded a party to secure counsel and for counsel to prepare a defense. Moreover, when counsel has been selected, reasonable efforts should be made to insure that a party has the services of that counsel. Even where counsel has not yet been selected, efforts should be made to accommodate reasonable requests of a party to secure counsel of his own choice.[3]

■ A trial court in exercising its discretion in these matters must give great weight to any substantial prejudice to the rights of the moving party. The court must also consider the interests of the opposing party, the public and the judicial system in the prompt disposition of litigation.

■ Considering all of these factors in Mr. Burleson's case, we hold that the court did not abuse its discretion in denying the further continuance so that Mr. Burleson might endeavor to secure the services of Mr. Kay. The continuance requested was significantly longer than that sought in either *Klockenbrink* or *Barrett*, and there had already been substantial delay in resolving the matter. On November 19, 1974, Mr. Burleson pled guilty and his sentencing was set for January 10, 1974 only to be reset for February 14, 1975, the date on which Mr. Burleson was actually sentenced. Mr. Fuld had represented Mr. Burleson since early November 1974, but it was not until February 11, 1975, three days before the scheduled sentencing, that Mr. Burleson sought to substitute Mr. Kay for Mr. Fuld. Since Mr. Fuld undertook the representation due to Mr. Kay's trip to Arizona, Mr. Burleson knew Mr. Kay would be absent at the sentencing hearing far in advance of February 11, 1975. He conceivably could have made arrangements for Mr. Kay to secure a leave of absence from his teaching duties in Arizona for the rela-

---

3. We are not here referring to situations where counsel is selected by the court for par-

ties proceeding in forma pauperis. *See McKinnon v. State*, 526 P.2d 18 (Alaska 1974).

tively short time necessary to attend the sentencing. On the other hand, if he was genuinely dissatisfied with Mr. Fuld's representation, he had ample time to secure other counsel during the period from November 1974 to February 1975.

█ Under some circumstances, the assertion of a right to a particular counsel could well thwart the efficient operation of the courts. In *Barrett*, we stated that

> if the withdrawal of counsel on the eve of trial were to be regarded as a compelling ground for granting a continuance, then all a party would have to do in order to delay matters would be to discharge his attorney. [footnotes omitted] 516 P.2d at 1203.

Similarly, if all that is needed to secure a continuance is to allege on the eve of a hearing the desire to change counsel, delays could be secured at will, and the orderly calendaring the cases and hearings would be improperly impeded. In the present situation, the hearing involved was not a trial but a sentencing. The defendant was not compelled to appear without counsel, but rather with counsel who suddenly became unsatisfactory. To allow the continuance under the facts of this case would provide an undesirable means of delay to all who wished to avail themselves of it. Efficiency in the operation of the court system and the interest of the public in prompt disposition of criminal cases dictate that unnecessary delays be avoided. Of course, such considerations must be subordinated if substantial rights of a defendant are affected. Here, however, Mr.

Burleson could have arranged for the presence of Mr. Kay, appeared for sentencing with counsel who had previously represented him, or secured any other attorney of his choice during the three-month period between his plea of guilty and the date finally set for sentencing. No abuse of discretion was committed by the trial court in denying Mr. Burleson's motion for a continuance.

## THE EXCESSIVE SENTENCE CLAIM

The sentence received by Mr. Burleson is the maximum allowable under Alaska law.[4] He contends that he is not the worst type of offender and, therefore, he should not have received a maximum sentence. He also argues that the sentence denied him due process of law because it was inequitably greater than that imposed for other violent crimes.

Particularly where violent crimes have been committed against innocent victims, we have found trial courts did not err in imposing lengthy sentences. In cases involving one, rather than two, victims, we have previously affirmed sentences of 20 years for various violent offenses,[5] even where the defendant had no prior criminal record.[6] Therefore, a sentence of 20 years for each violent offense committed by Mr. Burleson is not inequitably greater than that imposed for other violent crimes.

█ In the past, we have discussed various factors leading to the characterization of a defendant as one of the worst type of offenders. In *Wortham v. State*, 537 P.2d 1117, 1120 (Alaska 1975), we referred to

---

4. AS 11.15.140 provides:
 A person who, with malicious intent to maim or disfigure: (1) cuts, bites, or slits the nose, ear, or lip, cuts out or disables the tongue, puts out or destroys an eye, cuts off or disables a limb or any member of another person; or (2) throws or pours upon or throws at another person, any scalding hot water, vitriol, or other corrosive acid or caustic substance; or (3) assaults another person with a dangerous instrument, is punishable by imprisonment, in the penitentiary for not more than 20 years nor less than one year.

5. *Hofhines v. State*, 511 P.2d 1292 (Alaska 1973) (first-degree murder sentence for hiring a person to kill a spouse); *Dulier v. State*, 511 P.2d 1058 (Alaska 1973) (manslaughter); *Asitonia v. State*, 508 P.2d 1023 (Alaska 1973) (second-degree murder); *Torres v. State*, 521 P.2d 386 (Alaska 1974) (rape).

6. *Hofhines v. State, supra*, (defendant had no prior criminal record and had aided the state in bringing to justice the paid perpetrator of the crime); *Dulier v. State, supra*.

prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which have been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public. The lack of a prior criminal record, however, does not mean that a defendant may not be characterized as "the worst type of offender". In *Dulier v. State*, 511 P.2d 1058 (Alaska 1973), a maximum sentence of 20 years for a conviction of manslaughter was imposed on a defendant who had no prior convictions. The sentence affirmed was based on the nature of the crime committed, the defendant's character or attitude and psychiatric evidence indicating him to be a psychopath. We stated: "In our opinion Dulier falls within the category of the worst type of offender for the crime of which he was convicted".[7]

Although it is true that prior to the commission of this offense, Mr. Burleson was involved in no serious transgessions of the law,[8] the crime itself must be considered among the worst offenses under the applicable statute, AS 11.15.160. He calculatedly caused excruciating pain and permanent disfigurement to his victims. The offense was not one committed in the heat of passion, but was the result of efforts and plans developed over a period of three months. Even after the offense, there was no indication of true remorse by Mr. Burleson.[9]

 Dr. Mitchell, in a report compiled for Burleson's lawyer in North Carolina after the offense had been committed, stated:

301.3 Explosive personality. This behavior pattern is characterized by gross outbursts of rage or of verbal or physical aggressiveness. These outbursts are strikingly different from the patient's usual behavior and he may be regretful and repentant for them. The patients are generally considered excitable, aggressive, and over-responsive to environmental pressures. It is the intensity of the outbursts and the individual's inability to control them which distinguishes this group.

On examination the patient is still obviously depressed, irritable, and consumed with hostility. Although very regretful he nevertheless admits to an obsession of compulsive intensity concerning his ex-wife's boy-friend. He admits on further questioning that he finds it difficult to control his thinking and is afraid of himself and what he might do.

The calculated planning to injure two innocent victims, the atrocious nature of the crimes, and Burleson's dangerous propensity to cause further harm[10] lead us to conclude that it was not error for the trial court to consider Mr. Burleson to be in the class of the worst type of offender.[11]

---

7. 511 P.2d at 1061. We have also indicated that violent crimes involving physical injury to innocent victims are to be regarded as our most serious offenses and are not to be treated lightly. *Joe v. State*, 542 P.2d 159, (Alaska, 1975); *Ames v. State*, 533 P.2d 246, 248 (Alaska 1975); *State v. Armantrout*, 483 P.2d 696 (Alaska 1971); *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

8. His only prior conviction was for a traffic violation. His two other prior contacts with the police arose out of the breakup of his marriage. He entered Mrs. Burleson's house without her permission, and on another occasion immediately after the divorce, allegedly assaulted her.

9. His confederate, Mr. Jones, stated that when he informed Mr. Burleson of the results of his efforts, Mr. Burleson's comment was "You should have killed the son of a bitch".

10. *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975).

11. In his reply brief, Burleson also argues that consecutive sentences should not have been imposed. He cites *State v. Wortham*, 537 P.2d 1117, 1121, n. 7 (Alaska 1975). It was not by mere happenstance, however, that two individuals, rather than one, were mutilated. For the same reasons leading us to conclude that Mr. Burleson is in the class of the worst type of offender, we cannot find that it was error to impose consecutive sentences.

█ As indicated by the judge's ordering psychiatric treatment, the court in the case before us was concerned with the possibility of rehabilitation of Mr. Burleson. Moreover, the court did not set any particular period to be served prior to eligibility for parole.[12]

█ The judge, in his remarks at sentencing, indicated his consideration of the criteria we have previously approved in *Asitonia v. State*, 508 P.2d at 1026:

> (1) the nature and seriousness of the crime, (2) the need to rehabilitate Asitonia, (3) the need to protect society through isolating him, (4) the deterrent effect of the sentence both on Asitonia and others in the community, and (5) the effect of the sentence as a reaffirmation of societal norms.[13]

Mr. Burleson also contends that his sentence is disproportionately harsh when compared with that of Lee Jones, the paid perpetrator of the offense. Mr. Jones was sentenced to a total term of 30 years imprisonment as opposed to the Burleson 40-year sentence. This same type of argument was presented to us in the case of *Joe v. Alaska*, 542 P.2d 159 (Alaska, 1975), where a person involved in the same crime as Mr. Joe was given a substantially lighter sentence. There we stated that it is not the purpose of appellate review to enforce uniformity.[14] Sentencing is an individualized process, and all persons committing the same crime should not necessarily receive like sentences. Yet, theoretically, if two persons of identical background

commit the same offense, they should receive like punishment. Sentencing, however, is not an exact science, and disparities will occur. The question for this court is whether a disparity is so irrational as to be "unjustifiable".[15] We hope by our review of sentences to correct abuses of the sentencing power by increasing the fairness of the sentencing process.[16] We do not have Mr. Jones' sentence on appeal at this time. Our concern is whether the trial judge was clearly mistaken in the sentence imposed on Mr. Burleson. Whether Mr. Jones' sentence was clearly mistaken is not at issue.

█ In this regard, however, we note that there is a factor present in Mr. Jones' case that could justify the disparity in sentences, aside from the arguable point as to which had perpetrated the greater wrong —Mr. Burleson, the instigator, or Mr. Jones, the actual perpetrator of the offense. Mr. Jones cooperated with law enforcement officials in revealing evidence leading to Mr. Burleson's eventual conviction. Consideration of such cooperation is not improper in sentencing since it serves an important public interest in apprehending criminals.[17]

█ In a sentence appeal, our function is to ascertian whether the trial court was clearly mistaken [18] in imposing a particular sanction. We hold that Judge Kalamarides was not clearly mistaken in imposing the sentence for Mr. Burleson's offense.

---

12. AS 33.15.230 empowers a sentencing judge to designate a minimum term of "at least" one-third of the maximum sentence imposed before a prisoner is eligible for parole. We can find no indication as suggested by Mr. Burleson's counsel that eligibility for parole on the consecutive sentence must await service of the first 20-year term. An attorney general's cpinion to the Alaska State Parole Board dated February 6, 1974 indicates that eligibility for parole is at the discretion of the Parole Board, whether or not the sentences are imposed concurrently or consecutively.

13. *See also State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

14. *See also Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970).

15. *Perrin v. State*, 543 P.2d 413 (Alaska 1975).

16. *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

17. *See Hofhines v. State*, 511 P.2d 1292 (Alaska 1973).

18. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

## THE PRESENTENCE REPORT AND MANNER OF SENTENCING

 Mr. Burleson alleges that there were inaccuracies in the probation department presentence report, and that reliance was placed on police contacts not resulting in conviction. The judge, at sentencing, had before him a 15-page report prepared by the probation officer. Appended to it are statements from Lee Jones and the victims, physicians' reports on the victims, statements of Mr. Burleson's children in regard to Mr. Burleson's background, additional police reports pertaining to the offense and psychological and psychiatric evaluations of the appellant. Additionally, an extensive memorandum was submitted by counsel for Mr. Burleson together with statements by members of Mr. Burleson's family and favorable reports on his character. The alleged inaccuracies in this voluminous material are of a trivial nature and could not have adversely affected the rights of Mr. Burleson.[19]

 Mr. Burleson also contends that improper reliance was placed on police contacts which, he argues, made it appear that Mr. Burleson was a multiple offender. The presentence report, however, clearly stated:

> The defendant has no prior record. The defendant has no identifiable prior record of arrests or convictions for offenses other than one vehicle code violation. . . .

The report went on to refer to an incident when Mr. Burleson apparently entered Mrs. Burleson's home in violation of a restraining order, and a second instance when, immediately after the divorce, Mr. Burleson assaulted his former wife. Each incident is reported in some detail. The first instance resulted in no charges. On the second occasion, Mr. Burleson was arrested but not convicted.

Alaska Rule of Criminal Procedure 32(c)(2) provides in part:

> The report of the pre-sentence investigation shall contain any prior criminal [conviction including a finding of delinquency] of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. *No record of arrest or other police contacts shall be included in the report.* (emphasis added)

The incidents here referred to had some bearing on the crime committed, and Mr. Burleson had adequate opportunity to explain or deny the incidents. We are not presented with a case of unexplained police contacts or records of arrest. We have previously condemned reliance on such materials.[20]

 Appellant also contends that the trial court's sentence evolved out of the emotional effect the crime had on the judge rather than from an objective, penological decision. The statement by the judge relied on by Burleson in making this argument seemingly refutes the contention. The sentencing judge did state:

> I have considered the presentence report, the supplement thereto, and the matters as submitted by counsel for the defendant and the memoranda, and they have been extremely helpful to me. I have been with this case for a long period of time and I must say that while in the beginning there was a great deal of emotional attachment to it, since the first of

---

19. The statement of a Douglas Drum was claimed to have been attributed to Dell Birmingham. The report itself showed the necessary correction. It was also contended that a statement of Jerry Thorn was inaccurately used to imply bad judgment in the use of alcohol. The report elsewhere accurately reflected any drinking problem of Mr. Burleson.

20. *Galaktionoff v. State,* 486 P.2d 919, 924 (Alaska 1971); *Waters v. State,* 483 P.2d 199, 203 (Alaska 1971).

**1204**

the year I have been able to look at it in a purely objective fashion and digging into the various aspects of the case to look at them coldly and impartially. I have not only researched the areas that you had recommended, Mr. Fuld, with respect to sentencing. I have also researched the cases that we have in Alaska, . . . .

Such a statement hardly supports Mr. Burleson's claim.

The judgment of the trial court is affirmed.

Affirmed.