Thomas P. WILSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 3404.

Supreme Court of Alaska.

Aug. 11, 1978.

---

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Patrick J. Gullufsen, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

CONNOR, Justice.

Thomas P. Wilson was convicted of first degree murder following a trial by jury, and he was sentenced to life imprisonment. In this sentence appeal, Wilson claims that the trial court erred in imposing the maximum sentence, and that it was error for the trial court to classify Wilson as the worst type of offender.

The events leading to Wilson's conviction took place in Delta Junction, where Wilson and his wife owned and operated a tavern known as Tom's Inn. On the evening of July 31, 1976, Mrs. Wilson was injured when she tried to break up a barroom brawl. She sustained a five-inch-long cut above her left eye and a fractured cheek bone as a result of being struck by someone's fist.

Mr. Wilson initially assisted the State Troopers with the investigation of the incident, but apparently became dissatisfied with the Troopers' handling of the case.

Suspicion eventually centered on a pipeline worker named Bailey. On August 7, State Trooper John Preshaw telephoned Mr. Wilson to advise him that a complaint charging Bailey with the assault of Mrs. Wilson had been prepared, and could be signed before the Delta magistrate on the following Monday, August 9. On August 11, Preshaw learned that Mrs. Wilson had not yet signed the complaint. Preshaw went to Tom's Inn to tell the Wilsons, for the second time, that the complaint was ready for signing. According to Preshaw, Mr. Wilson told him that "he had somebody that was gonna take care of it and that the guy would either be up here or down there, indicating to me that he'd be in heaven or hell."

On the evening of August 13, 1976, Mr. Wilson received a telephone call at his place of business and left immediately thereafter. He went to the Evergreen Club, where someone apparently pointed out one of the patrons as the man who had beaten Mrs. Wilson. In fact, the person so identified to Mr. Wilson was not Bailey, but a young pipeline worker named Jerry Gunther, who had no connection whatever with the assault on Mrs. Wilson.

Gunther and a friend left the Evergreen and went outside to the parking area. Shortly thereafter, Mr. Wilson went out also, followed by a friend of his, Stephen Mata. Wilson moved behind Gunther and his companion, concealed from them by a camper vehicle. Mata approached Gunther and his friend from the opposite direction and asked them what they were doing. At this point, Wilson stepped out from behind the truck, accused Gunther of having beaten up Mrs. Wilson, and fired a revolver at Gunther, hitting him in the chest and head. Gunther died en route to the local clinic.

Trooper Preshaw heard the three shots, and looked out of the window of the Delta Junction Trooper Station, which was located a short distance from the scene of the crime. He saw someone lying on the ground and two other persons standing over the victim. Preshaw went to the parking lot, but by the time he got there, the two people who had been standing near the body were about ten feet away, walking back towards the Evergreen. Preshaw detained the two, Wilson and Mata. A crowd gathered, and Wilson tried to surreptitiously pass a revolver to Derald Kooiman, who stood nearby. Preshaw took the gun and arrested Kooiman for obstructing an officer.

At trial, Wilson testified that he did not seek out the victim in order to kill him, but intended merely to demand reimbursement of his wife's medical expenses. Wilson stated that after he confronted the victim, Gunther made a quick move, and Wilson, thinking that Gunther was reaching for a gun, drew his own weapon and fired. Wilson testified that he carried a gun for his own protection because of certain labor union troubles in which he was then involved. The jury did not believe Wilson's story, and found him guilty of murder in the first degree. The trial court sentenced Wilson to life in prison. This sentence appeal followed.

The sentence imposed on Mr. Wilson is the maximum allowable under Alaska law.[1] Wilson contends that he is not the worst type of offender and, therefore, that he should not have received the maximum sentence.

■ In *Wortham v. State,* 537 P.2d 1117, 1120 (Alaska 1975), we discussed the factors which should be considered before characterizing a defendant as one of the worst types of offenders. These factors are prior criminal convictions, age, military record, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which demonstrates an antisocial nature or dangerous propensities posing a clear risk to the public. It is true that many of the *Wortham* factors are favorable to Wilson, as he had an honorable discharge from the Army, a stable work record, no drug or alcohol addiction, and had been active in civic affairs in Delta Junction during his long residence in that community. Further, Wilson, who was 66 years old at the time the crime was committed, had no prior criminal convictions, a fact which he stresses in this appeal.

■ However, the lack of a prior criminal record does not mean that a defendant may not be characterized as the worst type of offender. In *Burleson v. State,* 543 P.2d 1195, 1201 (Alaska 1975), we upheld two maximum sentences for mayhem, to be served consecutively, although the defendant's only prior conviction was for a traffic violation. In that case, we considered the defendant's crime—paying an assailant to throw acid on the heads of the defendant's former wife and a friend of hers—to be among the worst offenses under the applicable mayhem statute.[2] We noted that the defendant had plotted the crime over a period of time, calculatedly causing pain and permanent disfigurement to the victims. We also observed that the defendant had shown no true remorse.

■ In the instant case, the trial court considered the particularly shocking facts which led to Wilson's conviction. Ignoring the legitimate efforts of law enforcement officers, who had a complaint ready for Mrs. Wilson's signature, Mr. Wilson instead

---

1. AS 11.15.010 provides:

"*First degree murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life."

2. *Cf. Dulier v. State,* 511 P.2d 1058 (Alaska 1973), in which defendant was found to be within the category of the worst type of offender. In upholding the maximum sentence for manslaughter in that case, we stressed the nature of the crime committed, the defendant's character and attitude, and psychiatric evidence. 511 P.2d at 1061.

took the law into his own hands by stalking and gunning down the person he believed to have assaulted his wife some two weeks earlier. That he killed a completely innocent person makes his conduct even more condemnable. The trial court noted that Wilson had made no admissions and had shown no remorse, other than that he had killed the wrong man. The trial court concluded that Wilson was the worst type of offender and that he deserved the maximum sentence.[3] On the facts of this case, we cannot say that the trial court was clearly mistaken in imposing a life sentence. Therefore, we must uphold the sentence.

AFFIRMED.

3. The transcript of the sentencing proceeding is not clear as to whether the trial judge considered Wilson to be the worst offender within the class of first degree murderers, or whether he considered him, as one guilty of first degree murder, to be within the worst class of criminal offenders generally. The relevant category is worst offender within the group of those persons committing the offense in question—here first degree murder. There was ample basis for categorizing Wilson to be within the worst class of first degree murderers.