David M. FERGUSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4111.

Supreme Court of Alaska.

Feb. 8, 1980.

Edith A. Glennon, Eagle River, for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum Gross, Atty. Gen., Juneau, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

David M. Ferguson was sentenced to a total term of fifteen years after entering guilty pleas to four counts of armed robbery and one count of attempted robbery.[1] He appeals the sentence as being excessive.

The charges against David all stemmed from a single incident in which he, his brother John Ferguson, and Steve Wightman robbed a bar near Palmer. The facts are set forth in detail in *Ferguson v. State*, 590 P.2d 43 (Alaska 1979). John Ferguson was the first of the trio to be sentenced. Judge Moody sentenced him to fifteen years on each of the armed robbery counts and seven years on the attempted robbery count—the sentences to run concurrently.[2]

Judge Kalamarides, who sentenced David Ferguson, believed that since his brother John had received a sentence of fifteen years' imprisonment, David should be treated the same. The judge stated:

> [S]o all three of you were acting as principals and acting in concert, each equally guilty, each necessarily mandated to the same term of imprisonment . . . .

---

1. He was sentenced to the maximum of 15 years each for the four counts of armed robbery, and to seven and one-half years for the crime of attempted robbery. All sentences were to run concurrently.

2. John Ferguson was also sentenced to two additional concurrent terms of ten years each on two counts of assault with a dangerous weapon. 590 P.2d 43, 44–45 (Alaska 1979). Those charges resulted from John's firing two shots from a shotgun at the state troopers in the flight following the robbery. Neither of the other two participants was charged with assault.

In justification of David's maximum sentence, the state refers to *Burleson v. State*, 543 P.2d 1195 (Alaska 1975), where we said: "[T]heoretically, if two persons of identical background commit the same offense, they should receive like punishment." [3] But we prefaced that remark with the statement, "Sentencing is an individual process, and all persons committing the same crime should not necessarily receive like sentences." 543 P.2d at 1202. In fact, Judge Kalamarides recognized this possibility in his statement quoted above, in which he also said that David should receive the same punishment as his brother John, "unless there has been some unusual circumstance shown to take you out of that classification." The judge held that there was no such unusual circumstance, and therefore that David deserved the same sentence as his brother, John.

David and John have like backgrounds in that they came from the same home environment, and have had alcoholic problems. But in other ways, their backgrounds are different. We stated in *Ferguson v. State*, 590 P.2d at 45:

Ferguson's demonstrated danger to the public outweighs the relatively poor prospect of rehabilitation revealed by his prior institutional commitments. Appellant was 18 years of age at the time of the robbery. He has no prior adult convictions, but in 1974 was adjudicated a delinquent child, following two incidents in which he stole cases of food from a store in Kodiak. At that time he was placed on probation. His probation was subsequently revoked on two occasions. In 1976, he was involved in a burglary, during which he carried a firearm, and was sent to the Lookout Mountain School in Colorado. . . .

The probation officer's report concluded that appellant has "demonstrated himself to be a very serious danger to society" and recommended "[t]ime to serve with no consideration of probation." The report notes that appellant's prior record while on probation was not good and that his previous stay in an institution had no significant effect on him. A psychiatric report, which was before the court at the time of sentencing, concluded: "This boy does not seem to have any treatable disorder and does not impress me as being motivated, at least not at this time to attempt any changes."

David Ferguson's background is dissimilar. He has no prior felony record. He does not have a juvenile record. He has three traffic convictions and one disorderly conduct conviction. He was in the Marine Corps for almost two years, and was given an undesirable discharge after having been AWOL.[4]

At the time of this offense, David was 20 years old, and had had a serious alcohol problem since he was 14 or 15. Before leaving school at the age of 16, David was getting all failing grades. However, while in jail after being arrested and prior to sentencing, David obtained his high school diploma through the GED program (General Education Development).

The pre-sentence report by probation officer Harold Fencl is favorable. Fencl reported that David

has shown remorse for what he has done . . . was cooperative with the police when apprehended and has been fully cooperative with this officer.

Fencl further reported:

He lacks responsibility and direction in his life. This is evidenced by his performance in the military. He does have potential as is evidenced by his performance while incarcerated. Jail personnel reveal that he has not been any problem in jail, and that he has been on trustee status since early December, 1977.

We have held in prior decisions that a maximum sentence, which was imposed on David, generally should not be imposed " 'without some foundation for characterizing a defendant as the worst type of offender.' " *State v. Wortham*, 537 P.2d 1117,

---

3. 543 P.2d at 1202.

4. The record indicates that he went AWOL at the advice of his legal officer in order to get discharged from the Corps.

1120 (Alaska 1975).[5] In the *Wortham* case, *id.*, we stated:

> Some of the factors which this court has looked to in order to support such a characterization—and the imposition of a maximum term—have been prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public.

Even though armed robbery can be classified as one of the "worst" type of offenses, in light of what we know of David's background and his behavior since he was arrested, we cannot say that he can be characterized as the "worst type of offender."[6] David has been in jail constantly from the date of his arrest on September 6, 1977, until the date of sentencing on May 22, 1978. In December, 1977, David became 21 years of age. During that month, he became a trustee in the jail and started employment status as an inmate worker as a KP. Shortly thereafter, he was promoted to head KP where he trained others in that work. According to his supervisor, "His own work habits and extreme amiability made him one of the most liked and respected inmates on the work force." David received two more promotions and was considered "very reliable in his duties."

David was told by Evelyn McKenzie, a worker with the Anchorage Alcohol Safety Action program, that he had a very bad problem with alcohol. Alcohol counseling was offered, and David asked to participate in the sessions and did so from March 14, 1978, onward.

There is evidence that David matured during his incarceration and prior to sentencing. In the report of probation officer Marilyn Davis, dated May 19, 1978, she stated:

> I consider him [David] to demonstrate a mature attitude toward the present situation and places blame only on himself for his predicament.

She also found him "to be exceptionally positive and realistic about institutional life."

Finally, at the sentencing hearing, testimony was given by Julia Winegarden, an alcoholism expert from the Office of the Governor, Human Rights Commission. After testifying as to her services at the jail regarding David, she gave this opinion regarding his sentence:

> I think anything over seven years and we've lost him forever. I think that he would be totally worthless. And that's not actual time served, that's sentence. You know, I think he'd be absolutely worthless. He'd be in and out of jail for the rest of his life.

The judge commented after this testimony: "I think she recognizes the situation with the defendant in a very, very practical sense."

The sentencing judge's comments at the sentencing hearing showed a consideration and application of the sentencing goals we have outlined in prior decisions.[7] As to reformation, the judge said only: "I do not feel that the fact that you may be on the road to rehabilitation is—and are also quite remorseful—overcomes the other items that I have set down."

---

5. *Quoting Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971).

6. Thus, the sentencing judge erred in basing his characterization of David as a worst offender on his belief that "the offenses with which you have been charged . . . have been deemed by the Supreme Court to be the most serious offenses, aside from murder, that there is [sic]. And a person who participates is deemed to be a worst offender." As we recently noted in *Wilson v. State*, 582 P.2d 154, 157 n. 3 (Alaska 1978), "The relevant category is worst offender within the group of those persons committing the offense in question . . ."

7. *See Rice v. State*, 589 P.2d 419, 421 n. 11 (Alaska 1979), where we summarized those goals as follows: 1) rehabilitation of the offender; 2) isolation of the offender from society; 3) deterrence of others with criminal proclivities similar to those of the offender; 4) deterrence of the offender himself; 5) community condemnation of the offender and affirmation of societal norms.

 

We believe that the judge did not give sufficient consideration to the goal of rehabilitation, which is one of the primary goals stated in our constitution.[8] David Ferguson's record while in prison between September 6, 1977, and the date of sentencing on May 22, 1978, as we have related it, and as it was placed before Judge Kalamarides at the sentencing hearing, indicates that he has made large strides towards being rehabilitated and that his rehabilitation ought to have been given more weight at the time sentence was imposed. Under these circumstances, we believe that the sentencing judge was clearly mistaken[9] in classifying David as a "worst offender" and imposing on him the maximum sentence allowed by law for his offense.

For these reasons, the sentence is vacated and the case is remanded for resentencing consistent with the views expressed in this opinion.[10]

BURKE, J., dissents, with whom MATTHEWS, J., joins.

RABINOWITZ, C. J., not participating.

BURKE, Justice, with whom MATTHEWS, Justice, joins, dissenting.

Appellant was a willing participant in a planned robbery. During the course of the robbery, several people were held at gunpoint. Thereafter appellant and his cohorts led two police officers on a high speed chase down a public highway, during which shots were fired at the officers. Given appellant's reckless disregard for the lives and safety of others, I am unable to say that Judge Kalamarides clearly erred in characterizing him as among the worst class of offenders or in imposing the sanction that he did. Accordingly, I would affirm the sentence. *McClain v. State*, 519 P.2d 811 (Alaska 1974).

---

8. Article I, section 12, of the Alaska Constitution states:

   Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

9. *Cleary v. State*, 548 P.2d 952, 954 & n. 8 (Alaska 1976).

10. Our dissenting colleague, Justice Burke, refers to the fact that "[A]ppellant and his cohorts led two police officers on a high speed chase down a public highway, during which shots were fired at the officers." If this is meant to imply that appellant fired the shots, it is incorrect. The shots were fired by appellant's brother, John Ferguson. *See Ferguson v. State*, 590 P.2d at 44.