**Phillip MORRIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4132.**

Supreme Court of Alaska.

April 6, 1979.

Walter Share, Asst. Public Defender, Brian C. Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

In the superior court Phillip Morris was charged by indictment with four counts of forgery and one count of attempting to pass a forged check.[1] Appellant subsequently entered pleas of nolo contendere and was sentenced to seven years imprisonment on each forgery count and five years imprisonment on the attempted forgery count. The sentences were made to run concurrently.[2] This sentence appeal followed.

Phillip Morris contends that the sentence which the superior court entered is excessive because the sentencing court committed an abuse of discretion in failing to consider suspending imposition of all or part of the sentence on condition that Morris complete a two year program at Family House.

Phillip Morris, presently twenty-eight years old, was born in Cordova, the sixth child of eleven. Morris' father died when he was nine years old. Thereafter, due to undesirable home conditions, he was placed in a foster home in the Anchorage area. Following placements in various institutions, Morris graduated from high school in 1968 and then joined the Navy. Thereafter Morris served twenty-three months in the Mekong Delta of Viet Nam between the years 1968 and 1971.

It was during Morris' military service that the first signs of misconduct on his part appeared. He was court-martialed on four occasions and eventually received a bad conduct discharge from the military service. Morris returned to the United States in 1971. Subsequent to his return, the appellant entered upon a course of conduct involving criminal violations as well as alcohol abuse. The record shows that in 1972 he was convicted of petty larceny and was sentenced to forty-five days imprisonment. In this same year he was convicted of grand larceny and received a one-year sentence. In 1973 Morris was convicted of trespassing, and in 1974 of operating a motor vehicle while under the influence of intoxicating beverages. In 1974 Morris also was convicted of the crime of passing a forged check and was sentenced to four years with three suspended. Approaching the end of his period of imprisonment appellant escaped and was thereafter convicted in 1975 of the crime of escape. During Morris' escape he committed another forgery for which he was sentenced to five years imprisonment with three years suspended. In 1977 Morris again was convicted of the crime of petty larceny and received a suspended nine-month sentence. Later in 1977, he committed the forgeries and attempted forgery which eventually led to this sentence appeal.

Morris' attack on the superior court's sentence is based on his contention that seven years imprisonment is too severe for a relatively nonserious property offense in light of Morris' background and the nature of the options which were available to the sentencing court. More particularly, it is argued that: "Underlying the psychological problems of appellant, and a constant note throughout the many evaluations . . . is the fact that appellant appears to intentionally commit acts, to place himself in the

---

1. AS 11.25.020 provides, in part:

   *Forgery of evidences of debt or uttering forged evidence of debt.* A person who, with intent to injure or defraud another . . . (2) knowingly utters, publishes, passes, or tenders in payment as true and genuine, a false, altered, forged, or counterfeited bill, note, draft, check, or other evidence of debt, or has in his possession that evidence of debt, with intent to utter or pass it as true and genuine, knowing it to be false, altered, forged, or counterfeited, is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

   AS 11.25.020 is repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980.

All the checks involved were cashed or attempted to be cashed within a seven-day time span. The checks, combined, totalled $550.00.

2. Based on these convictions the superior court revoked Morris' probation in two prior forgery convictions and imposed three years imprisonment for each offense. These two prior cases involved checks totaling $420.00. Morris also was given a six-month sentence for a misdemeanor conviction of receiving and concealing stolen property. The three sentences were made to run concurrently with the forgery and attempted forgery terms of imprisonment.

institutional setting."[3]  Further, Morris argues that seven years incarceration with no provision for entry back into society is excessive and contrary to the penal objectives established in article I, § 12 of Alaska's Constitution, and that the failure of the court to adequately assist appellant in terms of psychological counselling and reentry into society increases the chances of recidivism.[4]  Based on the foregoing, Morris takes the position that this court should reduce his sentence from seven years and place him on probation on the express condition that he enter the Family House program and complete that program.[5]

The state argues that the sentence imposed by the superior court is not excessive. First, the state notes that the applicable statute, AS 11.25.020(2), provides for a maximum sentence of twenty years and that Morris faced a possible maximum sentence of twenty years on Counts I, II, IV and V of the indictment.[6]  Second, the state places considerable reliance upon the fact that at the time of sentencing Morris had accumulated nine felony convictions.  Given Morris' lengthy record, the state further argues that this court's decision in *Kriska v. State*, 501 P.2d 159 (Alaska 1972), supports affirmance of the superior court's sentence in the case at bar.  In *Kriska*, the statutory maximum of ten years was imposed for the grand larceny of a $125 parka.  This court held that: "[C]onsidering the recidivistic nature of the defendant and the need to protect society, we find the sentence to be within a zone of reasonableness.  It was not an excessive sentence."  Finally, the state argues that certain criminals should be categorized as the "worst type of offenders" and should be sentenced more severely than less egregious offenders.  The state asserts that analysis and application of the relevant criteria lead to the conclusion that Morris should be categorized as a "worst type of offender."[7]

3.  Appellant's brief continues: "The many psychological and psychiatric evaluations done on appellant, both in the military and as a result of his criminal conduct, show quite clearly the [interreaction] between appellant's past family problems, his military problems, and his fear of the non-institutional life."

On this point, the probation officer observed in Morris' presentence report that:

[T]he prevailing note in all previous reports is the question of whether Phillip's problem is alcohol, or is secondary to some severe mental problems  .   .   .. This officer feels that unless Phillip Morris receives the intensive psychotherapy needed to break his pattern of arrest, conviction, and incarceration he will continue to come before the court on further criminal charges.

4.  In conjunction with these arguments, it is further contended that:

Appellant, by this sentence, will not be rehabilitated, especially since he appears to prefer an institutional setting and will continue to unless helped.  Nor will society be protected.

.   .   .

Appellant, since his release from the service, has had repeated criminal problems. Sending him to jail in the past had absolutely no effect on his behavior.  In fact, it is clear from the record that appellant intentionally violated the law to return to the security and sanctity of the institutional setting.  In light of appellant's history and background, such a result is understandable, from a psychological viewpoint.  He has spent all of his life either in broken or abusive homes, or safe institutional settings.  The combination of his past, as well as the stresses of military activity in Viet Nam, clearly have left appellant with an inability to cope with the real world. The sentence imposed by the trial court does nothing, either from the standpoint of society or the individual, to correct that situation.

5.  Alternatively, Morris asks that his sentence be reduced by suspending two years of the seven-year sentence on condition that he enter the Family House program and complete that program upon his release.

In this regard, the record reflects that the sentencing court did consider placing Morris in a two-year program at Family House.  The superior court, during the sentencing proceedings, stated, in part:

I listened carefully to your argument and I did consider sending him to the Family House but with his record I just can't justify doing that, and that's the reason I rejected it.

6.  Further, Morris could have been sentenced to a maximum of ten years on Count III for attempted forgery.  *See* AS 11.05.020(1).

7.  The worst type of offender categorization has not been limited to crimes of violence.  *See State v. Wortham*, 537 P.2d 1117 (Alaska 1975).

In *Wilson v. State*, 582 P.2d 154, 156 (Alaska 1978), this court stated:

In *Wortham*, we discussed the factors which should be considered before characterizing a defendant as one of the worst types of

Guided by application of the relevant sentencing criteria which were explained in *State v. Chaney*, 477 P.2d 441 (Alaska 1970), we have concluded that the superior court was not clearly mistaken in entering a sentence of seven years. Given Morris' extensive record and past failures to abide by the terms and conditions of his parole and probation, we cannot conclude that a sentence of seven years is excessive.

The superior court's sentence is Affirmed.

offenders. These factors are prior criminal convictions, age, military record, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which demonstrates an antisocial nature or dangerous propensities posing a clear risk to the public. [citation omitted]