**Oscar Flores SALUD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4973.**

Court of Appeals of Alaska.

July 16, 1981.

Sue Ellen Tatter, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Gayle A. Horetski, Asst. Dist. Atty., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Oscar Salud was convicted by a jury of second degree murder for shooting Delbert Cabesas. He appeals his conviction and sentence of life imprisonment to this court. Salud raises three evidentiary issues. He argues that the trial court erred in admitting evidence of Salud's reputation for violence; in admitting evidence that Salud on prior occasions possessed a .45 caliber hand gun similar to the one which was used to shoot Cabesas; and in admitting evidence that Salud had made threats against persons other than Cabesas.

There is no dispute over several critical facts in the case. Salud admitted shooting Cabesas several times with a .45 caliber automatic hand gun at a party in Anchorage with several people present. There is also no question that Salud and Cabesas were arguing over whether Salud owed Cabesas money moments before the shooting and that the shooting was the culmination of this argument.

The state's theory of the case was that Salud had shot Cabesas out of jealousy arising out of an inter-union rivalry and because Cabesas, in the argument over the money, had insulted Salud in front of other people. Salud, Cabesas, and most of the witnesses in the case were of Filipino descent. According to the state, Salud, as a

union organizer, had obtained jobs throughout the state for other members of the Filipino community. However, at the time of the shooting, Salud had not been able to deliver jobs and therefore was losing respect within the Filipino community. Salud also had a falling out with Cabesas, one of those for whom he could not get a job. In addition Cabesas had been selected by a rival union to assist in organizing the Filipino cannery workers in Kodiak. According to the state's theory, Salud was jealous of Cabesas because Cabesas was gaining in stature while Salud's popularity was declining. When the argument over the money started, Salud became angry, pulled out a .45 caliber automatic he was carrying, and shot Cabesas several times at close range. The state contended that the last shots were fired into Cabesas' head while he lay incapacitated on the couch from the first shot.

Salud testified that he acted in self defense. He claimed that during the argument over the money Cabesas pulled the .45 caliber automatic on him but he managed to take the gun away from Cabesas through unarmed combat techniques in which he had been trained.[1] According to Salud, Cabesas then came at him with a knife and Salud shot him several times in self-defense.

## THE TESTIMONY OF SALUD'S CHARACTER FOR VIOLENCE

Salud first claims the trial court erred in allowing the Chief of Police of Kodiak, Jack Rhines, to testify as to Salud's reputation for violence.

 Generally a character trait of an accused, such as his reputation for violence or peacefulness, is inadmissible to prove that he acted in conformity with that character trait. However, the accused may offer evidence of his good character for a character trait which is relevant to the issues being tried. Once the accused has introduced evidence of good character, the prosecution is permitted to rebut the evidence that the accused possesses that character trait.[2]

In this case the prosecution did introduce character evidence, through the testimony of Chief Rhines, that Salud had a reputation in Kodiak as being a violent person. The state claims that Salud offered evidence of his reputation as a peaceful person and that it was therefore permitted to rebut this evidence of good character by showing that Salud had a reputation for violence.

Salud argues that he did not present evidence of his reputation for peacefulness but that he only introduced some evidence to rebut the prosecution's theory of his motive for killing Cabesas. Since the prosecution had contended that Salud was slipping in power as a labor leader because of his inability to get people jobs and that he was jealous of Cabesas who was gaining power and respect as a labor leader, Salud contends that he was allowed to rebut this motive theory by introducing evidence of his good reputation as a labor leader and that this reputation had not declined at all at the time he shot Cabesas.

 Salud obviously walked a dangerous line in attempting to show that his good reputation as a labor leader had not been tarnished without opening up other aspects of his character. Salud established through several witnesses that he was greatly respected in the Filipino community in Kodiak, that he was a "nice guy," "a good

---

1. Salud demonstrated these techniques before the jury and produced expert testimony that he did have the ability to disarm a man with a hand gun.

2. Alaska R.Evid. 404(a)(1) reads as follows:
 (a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

 (1) *Character of Accused.* Evidence of a relevant trait of his character offered by an accused, or by the prosecution to rebut the same;

 \* \* \* \* \* \*

 *See* C. McCormick, Evidence § 191, at 454–59 (2d ed. 1972); *Freeman v. State*, 486 P.2d 967, 972–77 (Alaska 1971).

man," and "liked by the people." Although this evidence may have had some bearing on rebutting the prosecution's theory that Salud was jealous of Cabesas because Salud was losing respect within the Filipino community while Cabesas was gaining in stature, Salud did not try to restrict this evidence to rebutting the prosecution theory. We believe the record shows that Salud went beyond rebutting the prosecution's motive theory and affirmatively introduced evidence of his good character. A reasonable inference from the character evidence presented by Salud that he was "a good man," etc., was that he had a reputation for peacefulness since a person who was violent would not be described in those terms.[3] We believe that any ambiguity as to whether Salud was presenting evidence as to his reputation for peacefulness was resolved during the prosecution's cross-examination of Salud's witnesses. In cross-examining these witnesses the prosecution inquired into Salud's reputation for violence without objection from Salud that he had not intended to open up his reputation for violence. The witnesses produced by Salud all responded to the prosecutor's questions that Salud had a reputation as a non-violent person.

Salud argues that only the prosecution asked questions about his reputation for violence, that the issue was collateral, and that therefore the prosecutor was bound by the answers he received on cross-examination of Salud's witnesses and could not call Chief Rhines as an independent witness on the issue of Salud's reputation for violence. We disagree. Although normally the prosecution cannot on its own make the defendant's character an issue by asking questions on cross-examination, here it seems clear that Salud had already introduced evidence as to his character for peacefulness. By failing to object to the questions on cross-examination about his reputation for violence, along with introducing the earlier evidence, Salud made his character for violence an issue. We therefore believe the record shows that Salud did place in issue his character for peacefulness and the prosecution was entitled to call Chief Rhines to rebut this evidence first introduced by Salud. We find no error.[4]

## EVIDENCE THAT SALUD POSSESSED A .45 CALIBER AUTOMATIC

■ Salud contends that the trial court erred in admitting evidence that he possessed a .45 caliber automatic hand gun on several occasions prior to the date when he shot Cabesas. However, a key issue in the case was whether Salud came to the party where Cabesas was shot with the handgun or whether he took the .45 caliber automatic away from Cabesas before he shot him in self-defense. It was obviously relevant whether either Salud or Cabesas owned or had access to a .45 caliber automatic.[5] In addition, Salud denied that he carried a .45 caliber automatic on earlier occasions. The testimony of witnesses who had seen Salud

3. The accused may not present general evidence of good character. Character evidence "must be confined to particular traits of character relevant to the conduct with which the accused has been charged." In rebutting the defendant's character evidence "the state is restricted to showing bad character for the particular trait, or traits of character initially focused upon by the accused." *Freeman v. State*, 486 P.2d 967, 973 (Alaska 1971).

4. Salud argues that Chief Rhines was improperly permitted to testify that the Kodiak Brothers, an organization to which Salud belonged, held secret meetings and, "we've had two people beat up pretty bad" ... However the record shows that at this point in Chief Rhines's testimony Salud's counsel objected, not to the content of the testimony, but to the lack of

foundation for it. There was no motion to strike the testimony. The trial court then asked the prosecutor to ask Chief Rhines a leading question, apparently to direct his testimony to more relevant ground. Chief Rhines was then asked for and gave his opinion, without objection, that the Kodiak Brothers was not a law abiding organization. We conclude that there was no objection to this testimony at trial and that Salud has waived his right to raise this issue on appeal except as plain error. *Frink v. State*, 597 P.2d 154, 170 (Alaska 1979). Assuming admission of this testimony was erroneous, we do not find that it was plain error.

5. In fact, Salud introduced evidence which purported to show that Cabesas had been seen on an earlier occasion with a .45 caliber automatic hand gun.

on other occasions with a .45 caliber automatic was therefore relevant to impeach Salud's testimony.

After determining that the evidence was relevant, we next must decide whether "its probative value is outweighed by the danger of unfair prejudice." Alaska R.Evid. 403. Salud contends that the probative value of his carrying a .45 caliber automatic was weak since the people who testified that Salud carried a .45 caliber automatic on previous occasions also testified that the incidents took place several months or more before Salud shot Cabesas.[6] He also argues that allowing the prosecution to prove his prior possession of a hand gun by him was highly prejudicial. The trial court has a great deal of discretion in applying Alaska R.Evid. 403 and may only be reversed for an abuse of discretion. *Doisher v. State,* 632 P.2d 242, at 254 (Alaska App., 1981). Whether Cabesas or Salud initially possessed the .45 caliber automatic was a crucial issue in the case. The witnesses were specific that this was the type of weapon which Salud had possessed. The fact that Salud was seen with a .45 caliber automatic several months before Cabesas was shot is not as significant as if Salud were seen with the weapon a short time before the shooting. However, possession of a .45 caliber automatic by Salud on a number of occasions, the most recent being several months before the shooting, was still highly significant. We conclude the trial court did not err in admitting evidence that Salud possessed a .45 caliber automatic on several occasions prior to the date when he shot Cabesas.

### EVIDENCE THAT SALUD MADE THREATS AGAINST ROMEO RESCOVER AND EDUARDO DAGDAG

██ Salud next contends that the trial court erred in allowing the prosecution to introduce evidence that he had made threats towards two people, Romeo Rescover and Eduardo Dagdag.

Rescover testified that he had been working for Ahtna-Chugach-Voss, and had been laid off and was not rehired when new job openings occurred. Rescover felt that he was being treated unfairly and contacted the National Labor Relations Board. Rescover was then contacted by the Teamster's Union to be a witness in a related labor dispute against Ahtna-Chugach-Voss and the Laborer's Union to which Salud belonged. According to Rescover, Salud and another man, believing Rescover was suing the union, contacted Rescover and threatened him. Salud and the other man visited Rescover twice and Salud talked to Rescover on the phone once. Rescover stated that when Salud visited him, Salud was armed with a .45 caliber automatic and threatened Rescover and his family if Rescover did not sign a paper which would apparently drop any action Rescover had against the union. Rescover testified he was very frightened and signed the document.

Eduardo Dagdag testified that he was a witness along with Rescover in the labor dispute against Ahtna-Chugach-Voss and the Laborer's Union. Dagdag testified that Salud and another man approached him. According to Dagdag, Salud was armed with a .45 caliber automatic and threatened to kill him and his wife if he did not drop his action against the Laborer's Union. Dagdag also testified that he was very frightened by this incident.

Salud objected generally to the admission of this testimony at trial. The main focus of his objection was that it was irrelevant and unduly prejudicial to show that Salud possessed a .45 caliber hand gun several months before Cabesas was shot. The trial court ruled that it was relevant for the state to prove that Salud had access to a .45

---

**6.** Cabesas was killed on February 10, 1979. Romeo Rescover and Eduardo Dagdag testified to seeing Salud with a .45 caliber automatic in approximately July of 1978, about seven months before the shooting. Mr. Malpaya testified he saw Salud with a .45 caliber automatic in 1974 or 1975. Carmello Ramones testified he was at Salud's home in the summer of 1978 and saw Salud with a .45 caliber automatic, and that he saw him with a .45 in his pants at unspecified times after he saw it Salud's house.

caliber automatic. As we have indicated formerly, we believe this was a correct ruling. Although a certain amount of background information would be admissible to show the setting where Rescover and Dagdag saw Salud with a .45 caliber automatic, a strong argument can be made that this information could have been presented without admitting the threats which Salud allegedly made. However, Salud made no specific objection to the evidence that he made threats. Had the trial judge been asked to exclude the threats he probably would have done so. Alaska R.Evid. 403. However, since no objection was made to the evidence of threats by Salud toward Rescover and Dagdag and since there was no request to limit their testimony, we find the defendant has waived this point on appeal.[7] *Frink v. State*, 597 P.2d 154, 170 (Alaska 1979).

## SENTENCE APPEAL

Salud contends that the sentence of life imprisonment which he received for his second degree murder conviction was excessive. At the time of sentencing Salud was 37 years old. He had no prior record of criminal convictions. Salud had completed approximately three years of college. He had a good employment history and had no apparent problems of drug or alcohol abuse. Judge Carlson recognized all these positive factors but classified Salud as a worst offender because of the circumstances of the crime itself. Judge Carlson indicated he believed the testimony of Mrs. Delbert Cabesas, one of the key witnesses to the shooting and the wife of the victim. Mrs. Cabesas had testified that Salud pulled out a gun and shot Delbert Cabesas, who fell back on the couch. Salud apparently fired two more shots at Cabesas at close range as he was lying helpless on the couch. Salud then started to leave but returned to shoot Cabesas one more time in the head at close range. Judge Carlson concluded that the shooting was conducted in a particularly brutal manner. He also concluded that the circumstances of the shooting showed that Salud, who frequently carried a hand gun, could be easily provoked by an insult and would react in a violent manner. Judge Carlson felt that Salud's pride, which led him to this violent encounter, was such an important part of Salud's personality that it was unlikely that he could be rehabilitated. Judge Carlson concluded that Salud was one of the worst types of offenders, and imposed a maximum sentence to deter Salud and others "from carrying guns and acting on impulse."

Before imposing a maximum sentence, the trial judge must determine that the offender is one of the worst types of offenders within the category of crime for which he has been convicted. The supreme court has established several factors which the trial court is to consider in making this determination. The factors are "prior criminal convictions, age, military record, employment history, drug or alcohol addiction, presentence reports evaluations and recommendations, and behavior which demonstrates an anti-social nature or dangerous propensities posing a clear risk to the public." *Wilson v. State*, 582 P.2d 154, 156 (Alaska 1978); *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). A maximum sentence can be imposed even though most of these factors are favorable to the defendant.[8] In Salud's case the court placed almost total emphasis on its conclusion that Salud's behavior "demonstrated an anti-social nature or dangerous propensities posing a clear risk to the public." Although there was a great deal of information in the record to support the trial judge's conclusion, we are troubled by the fact that this conclusion was reached without the aid of a psychiatric report. We believe that such a report might be valuable in reaching con-

---

7. We do not find that admission of the testimony was plain error.

8. In *Wilson v. State*, 582 P.2d 154 (Alaska 1978), the supreme court upheld a life sentence for first degree murder even though the defendant had no prior record, a solid employment history, and no drug or alcohol problems.

clusions about Salud's personality make up, his propensity for violence, and his potential for rehabilitation. We therefore remand the case and direct the trial court to order a psychiatric examination of Salud and to reimpose sentence in light of all the evidence in the record, including the psychiatric report.[9] We express no opinion at this time on whether the sentence is excessive.

The judgment of conviction is AFFIRMED. The case is REMANDED for resentencing.

---

**9.** Salud did request a psychiatric evaluation. However, this request was not made until during the actual sentencing hearing.