Mattfi ABRUSKA, Appellant,

v.

STATE of Alaska, Appellee.

No. 7672.

Court of Appeals of Alaska.

Aug. 30, 1985.

Galen S. Paine, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Mattfi Abruska was convicted of second-degree murder. AS 11.41.110(a)(1). He received a ninety-nine year sentence. He appeals his conviction and sentence. We affirm.

Abruska shot and killed Joseph Nook. Abruska, Nook, Zaukar Littlefish, and two other men were drinking at Abruska's house the day Nook was killed. Abruska and Nook got into an argument, but Littlefish restrained Nook before either man struck a blow. Nook and Littlefish sat back down and began discussing their trapping plans. Within a minute afterwards Littlefish heard two shots and saw Nook double over. Littlefish looked up and saw Abruska about seven feet from Nook pointing a .22 caliber rifle at Nook. Littlefish got up, took the rifle away from Abruska, and went into the bedroom to hide the rifle. When he came out, Nook was outside.

One of the other two men present was asleep and heard no shots. The other man heard a shot while he was looking out the

window. He turned and saw Littlefish holding Abruska but not the rifle. The man then left the house immediately. The village safety officer passed by shortly thereafter and saw Nook on the ground outside. Littlefish signaled for the officer to come over. Nook was transported to the hospital where he spoke with troopers and medical personnel before he died.

Two bullets from the rifle had entered Nook's abdomen, one probably passing through Nook's wrist first. Abruska's rifle holds fourteen bullets. Twelve live rounds remained in the rifle. Abruska told Littlefish while Littlefish was still in the house that he had shot Nook in the gut. When troopers came to arrest Abruska, he stated, "Fuck you, I'll shoot you too." Abruska later told troopers that he asked Nook twice to leave and when Nook did not do so, Abruska got his rifle and began shooting.

Abruska raises three points on appeal. First, he contends the trial court erred in excluding evidence of Abruska's intoxication offered to show diminished capacity. Second, he contends that the indictment should have been dismissed because: (1) the grand jury was erroneously instructed; (2) the prosecution failed to present exculpatory evidence; and (3) the prosecution utilized inadmissible evidence. Finally, Abruska contends his sentence is excessive. We will discuss each of Abruska's contentions in turn.

### I.

Abruska was convicted of violating AS 11.41.110(a)(1), which provides:

(a) A person commits the crime of murder in the second degree if

(1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person.

### A.

Abruska was tried on the theory that he engaged in conduct knowing that it was substantially certain to cause death or serious physical injury to another person. He argues that he was unconstitutionally deprived of an "intoxication defense." Two other statutes are relevant to an understanding of Abruska's arguments. AS 11.-81.900(a)(2) defines the term "knowingly" as follows:

(2) a person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist; a person who is unaware of conduct or a circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance.

AS 11.81.630 provides:

Voluntary intoxication is not a defense to a prosecution for an offense, but evidence that the defendant was intoxicated may be offered whenever it is relevant to negate an element of the offense that requires the defendant intentionally cause a result.

We had occasion to consider these statutes in *Neitzel v. State*, 655 P.2d 325 (Alaska App.1982). In *Neitzel* we concluded that the legislature had foreclosed evidence of intoxication to show diminished capacity as to all offenses except those which required intent to cause a result as the *mens rea*. Abruska notes the existence of *Neitzel* but seems uncertain as to its holding. He therefore makes two lines of attack.

▪▪▪▪ First, he contends that as a matter of statutory construction the legislature intended to permit evidence of a person's past experience when intoxicated to the extent that it would be relevant to show his appreciation of the risks he presented to others when he was intoxicated. *See, e.g.,*

*Shane v. Rhines*, 672 P.2d 895, 899 n. 3 (Alaska 1983).[1] We generally agree with Abruska that the statutory limitations on the use of evidence of intoxication to show diminished capacity are aimed at precluding a showing that on a particular occasion a person was so impaired by alcohol that he could not appreciate the risks that his conduct presented to others. The statutory limitations would not prevent evidence by either the prosecution or the defense that the person's past experiences while drunk would or would not have alerted him to the risks that he presented to others when intoxicated. Our review of the record establishes, however, that Abruska did not make this argument in the trial court. His argument to the trial court was limited to offering evidence as to his intoxication on the night he shot Nook to show that he was unaware of the risk that his conduct posed to Nook at that time. This is the precise use of the evidence foreclosed by the statutes. The trial court did not err in rejecting Abruska's offer of proof.

■ Abruska's second line of attack challenges the constitutionality of both the limitation on the defense of intoxication in AS 11.81.900(a)(2) and, by extension, the absolute prohibition of that defense in AS 11.81.630. Abruska contends that the statutes in effect establish a conclusive presumption of sobriety which operates as a directed verdict of guilty on a necessary element of the offense of second-degree murder, namely, the necessary *mens rea* to constitute the offense. Abruska contends that this conclusive presumption violates the rule of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). He also relies on the due process and equal protection clauses of the state and federal constitutions. He reasons that there is no rational basis for preventing him from showing as a matter of fact that

he was unable to appreciate the risk his conduct posed to Nook. We reject Abruska's arguments.

■ First, there is no presumption conclusive or otherwise contained in the statutes under consideration. The legislature requires that the jury find beyond reasonable doubt that the defendant knew that his conduct was substantially certain to cause serious physical injury or death to a person and in fact caused a person's death. Thus, a jury could very well find that a specific person, without regard to that person's state of intoxication at a particular time, did not appreciate a given risk that his conduct would cause death or serious injury to another and *a fortiori* could find that he did not know that the conduct would cause death. In reaching this conclusion the jury could consider such things as the actor's intelligence, physical abilities, and experience. A jury might well find that a mentally retarded person whether or not he was intoxicated would not have appreciated the risk or risks that led to the victim's death even if the jury was convinced that a person of greater intelligence would have appreciated the risk. By the same token a person of poor eye sight or poor hearing might have been unaware of risks that a more fortunate person would have perceived. Finally, a person of limited experience regarding firearms or the operation of motor vehicles might not have appreciated the risks in the circumstances in which the person found himself at the time his conduct resulted in another's death, even though a reasonably prudent person possessing more typical experience would have appreciated those risks. In summary, whether the actor was sober or intoxicated at the time his conduct caused another's death, the jury, in order to convict him, must find that he would have appreciated the risks flowing from his con-

---

1. Under *Shane,* a person's history of driving while intoxicated is arguably admissible on the issue of culpability, an essential element in the jury's determination of the plaintiff's right to punitive damages. Such evidence is admissible on the issue of culpability because plaintiff must prove that defendant's conduct was "outrageous,

such as acts done with malice or bad motives or a reckless indifference to the interests of another" in order to receive punitive damages. We believe that, by extension, the evidence from which it could be inferred that defendant would be dangerous if intoxicated also would be admissible.

duct had he been sober. Thus, Abruska is simply wrong when he contends that the jury was instructed that it could find him guilty regardless of his subjective knowledge if it found that he was too intoxicated to know one way or the other.

■ We also reject Abruska's due process, equal protection, and by extension cruel and unusual punishment arguments, all of which turn on the contention that no legislature could rationally conclude as a matter of policy that intoxication should not be considered on the issue of knowledge. The Alaska Supreme Court has considered and rejected similar arguments on a number of occasions. The leading case is *Vick v. State*, 453 P.2d 342, 344–45 (Alaska 1969), where the court rejected constitutional challenges and affirmed a sentence imposed on a chronic alcoholic for being drunk in public despite evidence that he could not control his need to drink. *See also Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). In *Evans v. State*, 645 P.2d 155, 160 (Alaska 1982), the court adopted a rule rendering an accused's intoxicated state irrelevant to the issue of his sanity. The court said:

> In our view, the rule which should govern in Alaska is that voluntary intoxication will not support an insanity defense, and that all intoxication is to be regarded as voluntary unless it is unknowingly or externally compelled. This rule has been accepted in many jurisdictions. It is consistent with the traditional common law view of individual responsibility, as well as with the statute which governs this case, former AS 11.70.030, and with the statute now in effect, AS 11.81.630. [Footnotes omitted.]

*See also O'Leary v. State*, 604 P.2d 1099 (Alaska 1979); *McKinney v. State*, 566 P.2d 653, 664–66 (Alaska 1977); *McIntyre v. State*, 379 P.2d 615, 615–17 (Alaska 1963).

■ These cases are ultimately premised on the uncertainty among those who have studied alcoholism and the use of alcohol as to its precise effects on people's ability to appreciate the consequences of their acts.

We noted this uncertainty in *Neitzel* in our discussion of the Model Penal Code drafters' decision to preclude consideration of intoxication in determining the issue of recklessness. The line between a person's knowing that his conduct is substantially certain to cause death or serious physical injury and knowing that there is a substantial risk that his conduct will cause death or serious physical injury (a paraphrase of the recklessness standard) is sufficiently close that our decision in *Neitzel* that there is no constitutional violation in the legislature's decision to eliminate consideration of intoxication in determining recklessness, is equally applicable here:

> We mention first the weight of the prevailing law which here, more clearly than in England, has tended towards a special rule for drunkenness. Beyond this, there is the fundamental point that awareness of the potential consequences of excessive drinking on the capacity of human beings to gauge the risks incident to their conduct is by now so dispersed in our culture that we believe it fair to postulate a general equivalence between the risks created by the conduct of the drunken actor and the risks created by his conduct in becoming drunk. Becoming so drunk as to destroy temporarily the actor's powers of perception and of judgment is conduct which plainly has no affirmative social value to counterbalance the potential danger. The actor's moral culpability lies in engaging in such conduct. Added to this are the impressive difficulties posed in litigating the foresight of any particular actor at the time when he imbibes and the relative rarity of cases where intoxication really does engender unawareness as distinguished from imprudence. Those considerations lead us to propose, on balance, that the Code declare that unawareness of a risk of which the actor would have been aware had he been sober be declared immaterial.

*Neitzel v. State*, 655 P.2d at 335, *quoting* A.L.I. Model Penal Code, Tentative Draft No. 9 § 2.08, at 8–9 (1959). Since the dis-

tinction between knowledge of a fact and knowledge of a risk that the fact will result is a matter of degree, we conclude that the decision not to allow evidence of intoxication on the issue of knowledge is a decision within the legislative prerogative. Therefore, the Alaska legislature's factual determination that recklessness and knowledge should be treated the same is not irrational. *See State v. Ramos*, 133 Ariz. 4, 648 P.2d 119 (1982).

### B.

The foregoing discussion disposes of those constitutional arguments which Abruska clearly presented to the trial court and repeated in this court. Those arguments are based on Abruska's interpretation of AS 11.41.110(a)(1). His interpretation is based in part on the interpretations that we have previously given the Revised Criminal Code. It divides the elements of offenses into three categories: conduct, surrounding circumstances, and results; and four corresponding mental states: intentionally, knowingly, recklessly, and with criminal negligence. *Neitzel v. State*, 655 P.2d at 328–30. In his brief Abruska sets out the following interpretation of the statute as the basis for his arguments:

> In the second degree murder prosecution at issue in this case, the three critical elements are (1) conduct—shooting with a firearm; (2) circumstances surrounding the conduct—conditions under which it was substantially certain that death or serious injury would result from shooting; and (3) result—death of Joseph Nook. [Citation omitted.] The corresponding mental states are (1) "knowingly" for the conduct; (2) "knowingly" for the circumstances; and (3) "recklessly" for the result. That is, the substantive statute on murder specifies that the culpable mental state for the circumstances is "knowingly;" the other two culpable mental states are inferred from the general statute controlling construction of statutes with respect to culpability. [Citations omitted.]

Abruska qualifies his construction of the statute in the following language:

The statute is not a model of clarity as to which element the term "knowing" applies. The construction proposed in the text above is the only sensible possibility. To find that "knowing" applies to the conduct would mean that the defendant's culpability regarding the circumstances would have to be only "recklessly." AS 11.81.610(b)(2). This would be manslaughter, under AS 11.41.120(a)(1). Further, in light of AS 11.81.610(b)(1), the term "knowing" would be surplusage as applied to conduct. "Knowing" cannot apply to the result, because the statute clearly does not require the defendant to know that a death will result. It is the defendant's knowledge that he acts under circumstances such that his act is substantially certain to cause death or serious injury which makes his conduct so blameworthy as to constitute murder. Therefore, "knowing" must apply to the circumstances.

We have accepted Abruska's construction of the statute for purposes of resolving his constitutional claims. This is also the construction he placed on the statute in his arguments to the court below.

There is, however, another construction of the statute that would in effect render second-degree murder under AS 11.41.-110(a)(1) an intentional offense for which voluntary intoxication might be a permissible defense, *see* AS 11.81.630.

Alaska Statute 11.41.110(a)(1) states that "[a] person commits the crime of murder in the second degree if ... knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person." The meaning of this statute turns on the interpretation of the phrase, "knowing that the conduct is substantially certain to cause death or serious physical injury." The definition of "knowingly" in AS 11.81.900(a)(2), set out in the first paragraph of part 1 A *supra*, incorporates most of Model Penal Code §§ 2.02(2)(b) and 2.02(7). The Model Penal Code § 2.02(2)(b) provides:

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves *a result* of his conduct, he is aware that *it is practically certain that his conduct will cause such a result.*

Model Penal Code § 2.02(2)(b) (Proposed Official Draft 1962) (emphasis supplied). Section 2.02(7) provides that:

When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.

*Id.* at § 2.02(7).

Significantly, however, AS 11.81.900(a)(2) omits the provision that a person achieves a given *result* "knowingly" when he "is practically certain" that his conduct will cause that result. The Alaska statute is based upon New York Penal Code § 15.05(2)[2] which likewise limits "knowingly" to circumstances and conduct. The New York legislature's reason for omitting knowledge as to results is explained as follows:

"Intentionally" (subd. 1) and "knowingly" (subd. 2; cf. former Penal Law § 3[4]) are familiar concepts, and the revised definitions thereof are largely self-explanatory. It is to be noted, however, that the term "knowingly" is restricted to awareness of the nature of one's conduct or of the existence of specified facts or circumstances (e.g., that property is stolen, that one has no right to enter a building, etc.). Under the formulations of the Model Penal Code (§ 2.02[2bii]) and the Illinois Criminal Code (§ 4–5[b]), "knowingly" is, in one phase, almost synonymous with "intentionally" in that a person achieves a given result "knowingly" when he "is practically certain" that his conduct will cause that result. The distinction between "knowingly" and "intentionally" in that context appears highly technical or semantic, and the Revised Penal Law does not employ the word "knowingly" in defining *result* offenses. Murder of the common law variety, for example, is committed *intentionally* or not at all (§ 125.-25[1]; cf. Ill.Crim.Code § 9–1[a]).

N.Y. Penal Law § 15.05, Practice Commentaries at 29–30 (McKinney 1975) (emphasis in original).[3]

Illinois follows the Model Penal Code in permitting the term "knowingly" to govern result.[4] Illinois Criminal Code 38 § 4–5(b) provides that "[a] person knows or acts knowingly or with knowledge of ... [t]he result of his conduct, described by the statute defining the offense, when he is consciously aware that such a result is practically certain to be caused by his conduct." Ill.Ann.Stat. ch. 38, § 4–5(b) (Smith-Hurd

---

**2.** The New York statute provides:
1. "Intentionally." A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.
2. "Knowingly." A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.
N.Y.Penal Law § 15.05 (McKinney 1975).

**3.** The Alaska Law Revision Commission apparently agreed:
"Knowingly" may not serve as a culpable mental state for an element of an offense which is a result; a person "intends" a result.

Although one can "know" that a result is practically certain to occur, "intentionally" more properly connotes the active purposeful state of mind with which a result is achieved. Alaska Criminal Code Revision Part II, at 17 (Tent.Draft 1977) (Commentary to proposed AS 11.15.140(a)(1) and (a)(2) respectively defining "intentionally" and "knowingly." Intentionally and Knowingly).

**4.** The tentative draft of AS 11.41.110(a)(1), which established one degree of murder, treated knowingly causing death and intentionally causing death as synonomous. *See* Alaska Criminal Code Revision Part I, at 18 (Tent.Draft 1977). It was derived from the Illinois statute. *Id.,* Part I, Commentary at 97.

1979). Illinois Criminal Code 38 § 9–1(a) provides:

A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another, or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter.

Ill.Ann.Stat. Ch. 38, § 9–1(a) (Smith-Hurd 1979).

The commentary to the Illinois statute discusses the relevant provision of this statute as follows:

Subsection (a)(1) is intended to define the two most culpable types of conduct, which are within the older definition of "express malice"—acting either with actual intent to kill or do great bodily harm, or with knowledge that death or great bodily harm will (or is practically certain to) result. "Intends" is used as defined in section 4–4: "his conscious objective or purpose is to accomplish that result," death or great bodily harm. This is the actual intent, resulting from a rational choice of action, which many statutes have described as deliberation or premeditation—terms which, as noted above, require further definition, yet have been defined in terms which mean no more than actual intent.

"Knows" is used as defined in section 4–5(b): "he is consciously aware that ... such result is certain to be caused by his conduct." Absolute certainty of result would be an impractical standard; but a standard of practical certainty describes that conduct which, in its culpability, is substantially equal to the culpability of the act done with actual intent, but which is logically distinguishable in culpability from the *probability* of result described in subsection (a)(2) (See Moreland, "The

Law of Homicide," 17 to 19). The practical view of such a distinction lies in the differentiation of penalties, discussed below.

. . . .

Subsection (a)(2) is intended to define the conduct which, lacking actual intent to kill or do great bodily harm or knowledge that such a result will occur, involves knowledge of the probability that the offender's acts will cause death or great bodily harm. "Knows" is used again as defined in Section 4–5(b), but the degree of danger of death or great bodily harm is lesser than that described in the preceding subsection. Several methods of describing this probability appear in the statutes and cases [discussing various approaches to depraved heart murder similar to AS 11.41.110(a)(2), which is interpreted in *Neitzel v. State*, 655 P.2d 325 (Alaska App.1982) ].

. . . .

Clearly, no sharp dividing lines can be drawn, but the Committee chose "strong probability" as the plainest description of the situation which lies between the "practical certainty" of the preceding subsection, and the "likely cause" and "substantial and unjustifiable risk" of the involuntary manslaughter provision (§ 9–3, using "recklessly" as defined in § 4–6). This phrase would seem to require a minimum of further definition in jury instructions, and to permit ready comparison with the other two situations mentioned, when the evidence requires instructions thereon.

Committee Comments, *id.* at 17–19.

From a comparison of these various statutes, it appears clear that the Alaska legislature chose language in AS 11.41.110(a)(1) —"knowing that the conduct is substantially certain to cause death or serious physical injury to another person"—that parallels the Model Penal Code and Illinois definitions of "knowing" when used to govern a result, *i.e.*, the actor is aware that such a result is "practically certain" to be caused by his conduct. AS 11.41.110(a)(1) was also modeled on Arkansas Statute 41–1503(1)(c)

which punishes conduct as second-degree murder if the actor knows that that conduct is substantially certain to cause serious physical injury to another.[5] Arkansas, like Illinois, permits the word "knowingly" to modify a result.[6]

If the Alaska legislature intended the term "knowing" as used in AS 11.41.-110(a)(1) to modify a result rather than conduct or surrounding circumstances, the definition of "knowingly" in AS 11.81.-900(a)(2) would be inapplicable to AS 11.41.-110(a)(1) since, AS 11.81.900(a)(2) applies only to conduct or surrounding circumstances. Thus, AS 11.81.900(a)(2)'s restrictive phrase "a person who is unaware of conduct or circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance," would not apply to AS 11.41.-110(a)(1) and voluntary intoxication would be a permissible defense if "knowing" can be equated with "intending."

Alaska Statute 11.81.630 permits evidence of intoxication to "negate an element of the offense that requires the defendant intentionally cause a result." The commentary to New York's "knowingly" provision establishes that the line between "knowing" that one's conduct will cause death and "intending" death is imperceptibly thin. More significantly, the Alaska Supreme Court treated the terms as virtually synonymous when it addressed similar issues in *Mill v. State*, 585 P.2d 546, 548–50 (Alaska 1978), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). There the court discussed Model Penal Code § 211.1(2)(b) which defines aggravated assault to punish one who "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."

Model Penal Code § 211.1(2)(b) (Proposed Official Draft 1962). The issue in *Mill* turned on whether aggravated assault under then existing Alaska law should be interpreted as a specific intent or general intent statute. The distinction was relevant because Mill wished to offer evidence of diminished capacity due to intoxication and the Alaska Supreme Court was prepared to hold that diminished capacity due to intoxication cannot be invoked to negate general criminal intent. 585 P.2d at 551. The defendant argued that aggravated assault should be interpreted as a specific intent crime and in support relied on the Model Penal Code. The state countered that the Model Penal Code described a general intent offense at least in part. The state pointed out that under the Model Penal Code "purposely or knowingly causing bodily injury" would suffice for the offense. Although the term "purposely" implies the requirement of a specific intent to cause injury, the state reasoned the term "knowingly" requires general intent. The supreme court quoted the definitions in the Model Penal Code as follows:

> "Knowingly. A person acts knowingly with respect to a material element of an offense when:
>
> . . . .
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."

The court then said:

> In his treatise on criminal law, Perkins notes that both "purpose" and "knowledge" as used in the revision of the Model Penal Code can constitute intent.

> (2) "Knowingly." A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.
> Ark.Stat.Ann. 41–203(2) (1977).

---

**5.** Arkansas Statute 41–1503 provides in relevant part:

> (1) A person commits murder in the second degree if:
>
> . . . .
>
> (c) with the purpose of causing serious physical injury to another person, he causes the death of any person.
> Ark.Stat.Ann. 41–1503(1)(c) (1977).

**6.** Arkansas Statute 41–203(2) provides:

"Intent includes those consequences which (a) represent the very purpose for which an act is done (regardless of likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire)."

R. Perkins, *Criminal Law* at p. 747 (1969). Thus it appears clear that the Model Penal Code provision dealing with assault with a deadly weapon does require the specific intent to do bodily injury.

585 P.2d at 549.[7]

In summary, in *Mill*, a case decided prior to the revision of our criminal code, the supreme court interpreted the phrase, "knowing that his conduct is substantially certain to cause a result" as the equivalent of "intending that result." This interpretation is consistent with the current Model Penal Code which seems to treat knowledge and intent as the conceptual equivalent of common law specific intent, and recklessness and criminal negligence as the common law equivalent of general intent for purposes of the intoxication defense. *See, e.g.,* Model Penal Code, § 2.08 commentary at 2–9 (Tent.Draft No. 9, 1959). *But see United States v. Bailey*, 444 U.S. 394, 403–06, 100 S.Ct. 624, 631–32, 62 L.Ed.2d 575, 586–88 (1980) (knowledge (knowingly) corresponds loosely with general intent); *Bidwell v. State*, 656 P.2d 592, 594 (Alaska App.1983).

This interpretation of the statute renders second-degree murder by knowingly killing

7. Contrary to the statement in the *Mill* opinion, Perkins is discussing the Restatement (Second) of Torts § 8A (1965), rather than the Model Penal Code. R. Perkins, *Criminal Law* 746–47 nn. 41–43. Perkins continues:

> This is in substance the position taken by the Institute [American Law Institute, drafters of the Restatement (Second) of Torts]. What is meant by "substantially certain to result" is what the layman would speak of as something "bound to happen," and a lawyer would refer to as an "inevitable concomitant." The cautious wording copied from the Institute, resulted from philosophical doubt whether anything can properly be said to be "bound to happen." [Citation omitted.]

*Id.* at 747 n. 43. Perkins is referring to the Restatement (Second) of Torts § 8(a), which provides:

> Intent. The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

The comment to this section is particularly significant:

> Comment. (a) "Intent," as it is used throughout the Restatement of Torts, has reference to the consequences of an act rather than the act itself. When an actor fires a gun in the midst of the Mohave Desert, he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result. "Intent" is limited, wherever it is used, to the consequences of the act.
>
> (b) All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not,

however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. All three have their important place in the law of torts, but the liability attached to them will differ.

Restatement (Second) of Torts § 8(a) commentary at 15.

The Restatement's treatment of intent to include both "intent" and "knowledge" closely parallels the treatment these terms received in the Model Penal Code. The Restatement's treatment of recklessness in § 500 combines "recklessness" and "culpable negligence" as they are defined in the Model Penal Code and utilizes an objective theory in part which does not require subjective knowledge of the risk. It is therefore consistent with the definition of recklessness, *i.e.*, culpable negligence, adopted in *O'Leary v. State*, 604 P.2d 1099, 1104–05 (Alaska 1979). It is not completely consistent, however, with the definition of "recklessly" in AS 11.81.900(a)(3), which requires subjective appreciation of the risk. *Compare* Restatement (Second) of Torts § 500 *with* AS 11.81.900(a)(3) (defining "recklessly") and AS 11.81.900(a)(4) (defining criminal negligence). *See* Alaska Criminal Code Revision Part II, at 17–19. (Tent.Draft 1977) (Commentary to proposed AS 11.15.140(3) and (4) Recklessness and Criminal Negligence).

redundant of first-degree murder by intentionally killing.[8] *See* AS 11.41.100(a)(1). The alternative would be to view knowing murder in AS 11.41.110(a)(1) as redundant of what we have called reckless murder. AS 11.41.110(a)(2).[9] *See Neitzel,* 655 P.2d at 331–32. In *People v. Marcy,* 628 P.2d 69, 78–79 (Colo.1981), the Supreme Court of Colorado concluded that engaging in conduct "under circumstances manifesting an extreme indifference to the value of human life" is virtually indistinguishable from "knowing that his conduct is substantially certain to cause death or serious physical injury to another person." *See Neitzel,* 655 P.2d at 338 n. 3. This court noted in *Neitzel,* however, that the Alaska legislature clearly considered the two provisions distinct. *Id.,* citing Supp. No. 47 at 9–10 in 2 Senate J. (1978), following p. 1414 (legislative commentary on AS 11.41.110(a)(2)). It is possible that viewed as the legislature apparently viewed the relationship between the two provisions, reckless murder might be a lesser-included offense of knowing murder. *See Nicholson v. State,* 656 P.2d 1209, 1212 (Alaska App.1982) (lesser included offense need not have a lesser penalty).

However, it is not necessary to pursue the proper interpretation of the statute further. Abruska has never argued that he was in effect convicted of intentional murder. Nor has he specifically relied on the terms of AS 11.81.630 to support his offer

of evidence of diminished capacity through intoxication. Given the ambiguities and complexities in the statute, I am not prepared to say that the trial court committed plain error in not interpreting AS 11.41.110(a)(1) as an offense requiring that the defendant "intentionally cause a result" making evidence of intoxication relevant.[10] In fact the legislature may have drafted AS 11.81.630 to limit an intoxication defense to statutes which require an intent to cause a result in order to eliminate the problems discussed in this section of the opinion. Therefore, the trial court's decision to deny Abruska the right to rely on a diminished capacity defense based on intoxication is affirmed.

## II.

▆ Abruska makes three challenges to his indictment. The state argues that Abruska forfeited these claims because his motions were untimely. *See* Alaska R.Crim.P. 12(e), 16(f)(3) (challenges to evidence or indictment are forfeited unless raised pretrial, for example at the omnibus hearing). While this is true, it appears that Superior Court Judge Christopher R. Cooke ruled on the merits of each claim. We have held that where the trial court permits an untimely pretrial challenge to the indictment pursuant to Criminal Rule 12(e) and rules on the merits of that challenge,

---

8. This was, in part, the Alaska Law Revision Commission proposal. *See* Alaska Criminal Code Revision Part I, at 18 (Tent.Draft 1971), proposed AS 11.41.110(a)(1). *See also* Stern, *The Proposed Alaska Revised Criminal Code,* 7 U.C.L.A.—Alaska L.Rev. I, 40–42 (1977).

9. Alaska Statute 11.41.110(a)(1) and (2) provide:
   (a) A person commits the crime of murder in the second degree if
   (1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person; [or]
   (2) the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life.

Alaska Statute 11.41.100(a)(1) provides:
   (a) A person commits the crime of murder in the first degree if, with intent to cause the death of another person, the person
   (1) causes the death of any person.

10. It is equally unclear that the "substantial prejudice" prong of the plain error rule has been met here.
   Even if such a construction of the statute were adopted, Abruska might not be benefited. If reckless murder is a lesser-included offense of knowing murder and both have the same penalty, but "intoxication" is no defense to reckless murder, then a reversal would leave open the possibility that on remand the trial court could simply enter judgment on reckless murder. *See Nix v. State,* 690 P.2d 745 (Alaska App.1984).

we should not ignore the claim on forfeiture grounds. *Morgan v. State*, 661 P.2d 1102, 1103 & n. 1 (Alaska App.1983). We therefore address the merits of Abruska's claims.

■ First, Abruska contends that the grand jury was erroneously instructed. He notes that a two-count indictment was presented to the grand jury. Both counts derived from AS 11.41.110(a)(1). The first count charged that Abruska shot Nook with a firearm with the intent to cause serious physical injury resulting in death. The second count charged that Abruska shot Nook with a firearm knowing that his conduct was substantially certain to cause death or serious physical injury and did cause death. The first count was dismissed prior to trial. Abruska argues that the prosecutor gave two erroneous instructions which tainted the deliberations of the grand jury. Abruska contends that on three occasions during the grand jury instruction by the prosecutor, the prosecutor referred to the possible outcome at trial. He interprets the prosecutor's statements as threatening the grand jury that if it did not return a true bill on Count II and if an intoxication defense were successful as to Count I, there would be no conviction by a trial jury. Further, Abruska contends that error occurred when the prosecutor told the grand jury that "the grand jury can make a decision on either or both [counts].... It's not an either/or alternative, both questions or both counts should go to the jury for their decision, if the grand jury returns a true bill on both." Abruska interprets this language as requiring the grand jury to return a true bill on one or both counts.

As the state points out, a review of the entire record establishes that the prosecutor did not act improperly. The grand jury foreman and another juror were curious about the two counts of the indictment when it was first read and persisted in asking questions about the elements of each and why both were needed. After the evidence had been presented, the foreman again asked similar questions. The prosecutor's responses were for the most part technically correct, and probably the best ones that could have been made under the circumstances.[11] Abruska is not challenging the fact that the indictment was in two counts, or that one count was dismissed before trial.

Second, Abruska argues that the indictment should have been dismissed for failure to present exculpatory evidence to the grand jury. *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979). A trooper talked with Joseph Nook at the hospital before he died, and Nook told the trooper that Abruska had shot him. Abruska argues that *Frink* was violated by allowing the trooper to testify to this statement before the grand jury "without the ample qualifying and contradictory statements made by three other people" who talked to Nook at the hospital. The evidence Abruska refers to was of a "qualifying" nature in the sense that it qualified statements of Nook which were harmful to Abruska. In essence, Abruska would have had the grand jury told that three other people talked to Nook and that their testimony supported an inference that Nook denied that Abruska had shot him.

■ Abruska misunderstands the rule of *Frink*. The prosecutor has a duty to produce evidence which will substantially tend to negate guilt, but not to develop evidence for the defendant or to present evidence "possibly favorable" to the defendant. *Dyer v. State*, 666 P.2d 438, 444 (Alaska App.1983); *Tookak v. State*, 648

---

**11.** As noted in part IB of this decision, the line between "intending a result" and "knowing that the result is substantially certain to follow from the actor's conduct" is very thin. Some grand jurors recognized this and wondered why the prosecutor sought an indictment containing both counts. In other words, the grand jurors wanted to know the difference between the two counts. The prosecutor's answer, which focused on the intoxication defense, explained what may be the only difference.

P.2d 1018, 1021 (Alaska App.1982). Moreover, "[t]he mere fact of inconsistency [between inculpatory and other evidence] does not automatically convert all [inconsistent] evidence into exculpatory evidence." *Preston v. State*, 615 P.2d 594, 602 (Alaska 1980).

■ The alleged exculpatory evidence consists of the testimony of (1) a nurse attending Nook who thought she heard Nook say that "Nick shot me"; (2) a doctor who allegedly also heard Nook say he was shot through a door; and (3) a district attorney, present while the trooper questioned Nook, who stated that Nook told the trooper that he did not see Abruska shoot him. In context, it is clear that the district attorney understood Nook to have believed that Abruska shot him and that the nurse's and doctor's statements, in context, would have been of little exculpatory value. The remaining evidence consists mainly of a series of statements about the circumstances of the shooting which conflict somewhat with each other and with the other evidence presented to the grand jury. It is difficult to see how conflicting statements by Nook can be said to substantially negate Abruska's guilt. *See Tookak v. State*, 648 P.2d at 1021 (in light of all the evidence implicating Tookak, the failure of other witnesses to identify him did not meet the test of negating guilt).

■ Finally, Abruska complains that the indictment should have been dismissed because of inadmissible evidence presented to the grand jury, in the form of hearsay, speculation, and testimony about the results of an improper experimentation by the trooper investigating the shooting. We have carefully reviewed Abruska's arguments in light of the record and find no

error. The testimony of "experimentation" was minimal and if error occurred it was harmless.

### III.

Abruska received a maximum ninety-nine year sentence.[12] In arguing that this sentence is excessive, Abruska relies upon *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983), where we said:

It would appear appropriate ... that one convicted of [second-degree murder] should receive a sentence of from twenty to thirty years.

We went on to say, however, that aggravating circumstances would permit enhancing the sentence up to ninety-nine years, and Page himself was properly found to be a worst offender under *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975), justifying his maximum ninety-nine year sentence. A lengthy presentence report in this case documented the very high number of incidents of physically abusive behavior by Abruska during his adult life, and the extreme lack of insight Abruska has into the cause of that behavior.[13] Abruska filed a "denial of presentence report allegations" denying "each and every allegation of felonious conduct unsupported by information or indictment" as well as some specific instances. At sentencing, many of those interviewed by the probation officer who prepared the presentence report testified about Abruska's extreme and violent conduct.

■ Based upon this evidence, Judge Cooke found that Abruska was a worst offender. Judge Cooke found that the murder was without provocation. He noted that while there was a severe pattern of

---

**12.** Second-degree murder is an unclassified offense, AS 11.41.110(b). There are no presumptive terms. The minimum and maximum penalties are respectively five and ninety-nine years. AS 12.55.125(b).

**13.** While Abruska has only one prior felony conviction verified, information at sentencing

established that he has a long history of violent behavior which serves to distinguish his case from *Pears v. State*, 698 P.2d 1198 (Alaska 1985) (youthful first offender convicted of second-degree murder for motor vehicle homicide while intoxicated should receive a sentence of less than twenty years).

alcohol abuse, many of Abruska's past acts of violence were committed while Abruska was not intoxicated which indicated that even were Abruska rehabilitated in terms of his alcohol abuse, the overall prospects for his rehabilitation would be minimal. Judge Cooke concluded that the nature and circumstances of the murder, the pattern of cruel and violent behavior to others, and the minimal prospect for rehabilitation of Abruska all justified a "worst offender" characterization. *See State v. Wortham*, 537 P.2d at 1120. Having reviewed the record, we cannot say that Judge Cooke was incorrect in finding that Abruska was a worst offender or that the sentence imposed was clearly mistaken. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).[14]

The judgment and sentence of the superior court are AFFIRMED.

BRYNER, Chief Judge, and COATS, Judge, concurring.

We join in the result which Judge Singleton reaches. However we do not join in the extended discussion in part IB of the opinion. This discussion appears to us to be unnecessary to the resolution of this case.

---

14. Generally, a trial court should not impose a maximum sentence without the benefit of a psychological evaluation of the defendant. *See Salud v. State*, 630 P.2d 1008, 1013–14 (Alaska App.1981). Failure to obtain such a report *sua sponte* may be plain error. Where, however, the defendant does not request an evaluation and the court has extensive information establishing a continuous course of violent behavior, it may impose a maximum sentence without requiring such an evaluation. In this case, the trial court had a pretrial psychiatric report and the defense does not argue that an updated report would have benefited Abruska at sentencing. We therefore find no plain error.